This case involves four defendants, three of whom were convicted as a result of searches at two locations. The appellants, Herbert Moore,[1] David Jones, and Robbie Moore, were charged in a three-count indictment with trafficking in cocaine. Count one of the indictment charged all three appellants with trafficking in cocaine seized during the search of David Jones's residence. Count two of the indictment charged Herbert Moore and David Jones with trafficking in cocaine seized during the search of David Jones's residence. Count three of the indictment charged Herbert Moore, David Jones, and his daughter, Shelia Jones,[2] with trafficking in cocaine seized during the search of Shelia Jones's apartment.
The three appellants were tried jointly and were found guilty as charged in the indictment. Herbert Moore was sentenced as a habitual felony offender to life in prison without parole on each count, the sentences to be served consecutively. David Jones was sentenced to 30 years in prison on each count, the sentences to be served consecutively. Robbie Moore was sentenced to 30 years in prison.
The illegal drugs that were the subject of the trafficking charges were discovered during two searches, resulting from two search warrants. One warrant authorized the search of David Jones's residence and the other authorized the search of Sheila Jones's apartment. Because the search of David Jones's residence was unconstitutional, the convictions of these drug traffickers must be reversed as to counts one and two of the indictment.
 I
The appellants contend that the search warrant authorizing the search of David Jones's house at 3310 East Tucker Drive in Huntsville, was illegally executed. They point out that the officers gave no notice of their presence, of their purpose, or of the fact that they had a search warrant, and that they made no request of the occupants to *Page 960 
open the door. The evidence is uncontradicted that the officers entered the house by bashing the door with a battering ram. One of the police officers testified in effect that the officers shouted the word "Police!" as they raced down the driveway carrying the battering ram and immediately before ramming the door.
David Jones testified that he heard running and that the next thing he knew, the door crashed open. He was sitting on the couch in the living room with his wife and children. Herbert Moore and Robbie Moore were also in the house. He stated that the police came in yelling "Stick your hands up. Police." Then they began the search.
It is fundamental that law enforcement authorities should not enter a home until and unless they have announced their presence and demanded entry. This principle was acknowledged and applied as long ago as 1603 in the English case ofSemayne's Case, 77 Eng.Repr. 194 (1603). The court stated:
 "In all cases when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors . . . for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him; for perhaps he did not know of the process, of which, if he had notice, it is to be presumed that he would obey it. . . ."
77 Eng.Repr. at 195-96. (Emphasis added.)
As the Supreme Court of Rhode Island in State v. Carufel,112 R.I. 664, 314 A.2d 144 (1974), stated:
 "Although the origin of this rule, which is applicable to both arrest and search warrants, is rooted in the common law, the rule itself has constitutional dimensions. The knock and announce requirement is embodied in the fourth amendment and thus applicable against the states through the fourteenth amendment. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). See also State v. Dusch, Inc., 259 Ind. 507, 289 N.E.2d 515 (1972)."
314 A.2d at 147.
The United States Constitution states:
 "The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."
U.S. Const., Amend. IV. Art. I, § 5, Ala. Const. of 1901, states the same fundamental principle and also applies to this case.
Because we are interpreting a provision of the United States constitution, the United States Supreme Court's cases interpretating that provision are controlling. That Court inMiller v. United States, 357 U.S. 301, 78 S.Ct. 1190,2 L.Ed.2d 1332 (1958), Ker v. California, 374 U.S. 23, 83 S.Ct. 1623,10 L.Ed.2d 726 (1963), and Sabbath v. United States, 391 U.S. 585,88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), addressed the application of the federal "knock-and-announce" statute, 18 U.S.C. § 3109. That statute is substantially the same as the Alabama statute that has been in our Code since 1852. § 15-5-9, Code of Alabama 1975. See also Annot., What Constitutes Compliance withKnock-And-Announce Rule in Search of Private Premises — StateCases, 70 A.L.R.3d 217 (1976).
The United States Supreme Court has recognized that states may enact laws pertaining to searches and seizures. These laws are to implement and must not violate the Fourth Amendment of the United States Constitution.
 "The States are not . . . precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the *Page 961 
States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain."
Ker, 374 U.S. at 34, 83 S.Ct. at 1630, 10 L.Ed.2d at 730.
The United States Supreme Court in Miller stated:
 "We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house. Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house."
Miller, 357 U.S. at 313, 78 S.Ct. at 1197-98,2 L.Ed.2d at 1340. (Footnote omitted.)
Justice Brennan, dissenting in part in Ker v. California, discussed the compelling reasons behind the knock-and-announce requirement.
 "Two reasons rooted in the Constitution clearly compel the courts to refuse to recognize exceptions in other situations when there is no showing that those within were or had been made aware of the officers' presence. The first is that any exception not requiring a showing of such awareness necessarily implies a rejection of the inviolable presumption of innocence. The excuse for failing to knock or announce the officer's mission where the occupants are oblivious to his presence can only be an almost automatic assumption that the suspect within will resist the officer's attempt to enter peacefully, or will frustrate the arrest by an attempt to escape, or will attempt to destroy whatever possibly incriminating evidence he may have. Such assumptions do obvious violence to the presumption of innocence. Indeed, the violence is compounded by another assumption, also necessarily involved, that a suspect to whom the officer first makes known his presence will further violate the law. It need hardly be said that not every suspect is in fact guilty of the offense of which he is suspected, and that not everyone who is in fact guilty will forcibly resist arrest or attempt to escape or destroy evidence.
 "The second reason is that in the absence of a showing of awareness by the occupants of the officers' presence and purpose, 'loud noises' or 'running' within would amount, ordinarily, at least, only to ambiguous conduct. Our decisions in related contexts have held that ambiguous conduct cannot form the basis for a belief of the officers that an escape or the destruction of evidence is being attempted. Wong Sun v. United States, 371 U.S. 471, 483-484, 83 S.Ct. 407, 415-416, 9 L.Ed.2d 441; Miller v. United States, supra, at 311, 78 S.Ct. at 1196-97, 2 L.Ed.2d 1332."
Ker, 374 U.S. at 55-56, 83 S.Ct. at 1641-42,10 L.Ed.2d at 751-52. (Footnote omitted.)
The United States Supreme Court in Miller v. United States
recognized that there are exceptions to the knock-and-announce requirement. That court stated:
 "There are some state decisions holding that justification for noncompliance exists in exigent circumstances, as, for example, when the officers may in good faith believe that they or someone within are in peril of bodily harm, Read v. Case, 4 Conn. 166 [1822], or that the person to be arrested is fleeing or attempting to destroy evidence."
357 U.S. at 309, 78 S.Ct. at 1195-96, 2 L.Ed.2d at 1338. (Emphasis added.) *Page 962 
In Sabbath v. United States, the United States Supreme Court reversed a defendant's conviction because the law enforcement officers failed to comply with the same constitutional provision at issue here. The court stated the following about the absence of exigent circumstances in Sabbath:
 "[T]his record does not reveal any substantial basis for excusing the failure of the agents here to announce their authority and purpose. The agents had no basis for assuming petitioner was armed or might resist arrest, or that [the officers were] in any danger. Nor, as to the former, did the agents make any independent investigation of petitioner prior to setting the stage for his arrest with the narcotics in his possession."
Sabbath, 391 U.S. at 591, 88 S.Ct. at 1759. Similarly, Alabama courts have reversed a number of cases for violation of the constitutional right to freedom from unreasonable search and seizure. See, e.g., Ex parte Gannaway, 448 So.2d 413
(Ala. 1984), McReynolds v. State, 568 So.2d 850
(Ala.Cr.App. 1989), and Reynolds v. State, 46 Ala. App. 77,238 So.2d 557, cert. denied, 286 Ala. 740, 238 So.2d 560 (1970).
What constitutes exigent circumstances that would excuse compliance with the knock-and-announce requirement? Alabama cases have not clearly defined "exigent circumstances." While there has been some "chipping away at" the principle under discussion in some state cases, the interpretations of the United States Supreme Court in matters involving the United States Constitution are controlling as are the definitions set out above.
The Tenth Circuit Court of Appeals defined "exigent circumstances" in United States v. Stewart, 867 F.2d 581 (10th Cir. 1989):
 "The term 'exigent circumstances,' in conjunction with the entry of a residence during the execution of a search warrant, refers to those situations where 'the officers believe there is an emergency situation and . . . their belief is objectively reasonable.' United States v. Spinelli, 848 F.2d 26, 29 (2d Cir.). See also United States v. Flickinger, 573 F.2d 1349, 1355 (9th Cir.) (exigent circumstances are those which suggest an 'urgent need for immediate action'). The reasonableness of the officers' conduct hinges on the facts within their knowledge indicating exigency. [United States v.] McConney, 728 F.2d [1195] at 1206 [(9th Cir. 1984)]. The conclusion of exigency under these facts must be especially clear in this case where there was no knock or warning whatsoever, where there was no information as to who was in the house, where the destruction of physical property took place, and where the occupants of the residence could be injured as a result of the entry. We must determine whether the officers, after considering the particular facts regarding the premises to be searched and the circumstances surrounding the execution of the warrant, could reasonably have decided that an urgent need existed for such an entry into the premises. Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 737, 4 L.Ed.2d 697 ('a claim under 18 U.S.C. § 3109
depends upon the particular circumstances surrounding the execution of the warrant') (citing Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 [1958])."
Stewart, 867 F.2d at 584. (First emphasis added; second emphasis original.)
The Second Circuit Court of Appeals in United States v.Spinelli, 848 F.2d 26 (2d Cir. 1988), stated:
 "[W]e adhere to the principle implicit in our prior cases that exigent circumstances may excuse noncompliance with the knock-and-announce requirement only where (1) the officers believe there is an emergency situation and (2) their belief is objectively reasonable. To excuse noncompliance either when the officers had no thought of emergency or when there was no reasonable basis for such thoughts would inappropriately compromise the privacy interest to be protected."
848 F.2d at 29. (Emphasis added.)
Whether exigent circumstances exist depends upon whether an "emergency situation" exists. An emergency situation exists "when the officers may in good faith *Page 963 
believe that they or someone within are in peril of bodily harm . . . or that the person to be arrested is fleeing or attempting to destroy evidence." Miller, 357 U.S. at 309,78 S.Ct. at 1195-96, 2 L.Ed.2d at 1338. Further, an emergency situation must be evaluated as of the time the warrant is executed. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725,4 L.Ed.2d 697 (1960), rev'd on other grounds, United States v.Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
The state cannot excuse compliance with this time honored principle of freedom from unreasonable search and seizure merely because of the easy destructibility of drugs when drugs are the object of the search.
 "A belief that contraband will be destroyed must be based upon sounds or activities observed at the scene or specific prior knowledge that a particular suspect has a propensity to destroy contraband. No blanket exception exists for narcotics cases, in spite of the relative ease of disposal of drugs."
State v. Jeter, 30 Wn. App. 360, 634 P.2d 312, 314 (1981). Cf. Armenteros v. State, 554 So.2d 574 (Fla.App. 3 Dist. 1989).
When the state is seeking to use safety concerns to excuse compliance with the knock-and-announce requirement,
 "the government must show that the police had concrete, particularized evidence that reasonably led them to believe that (1) there were weapons on the premises and (2) there was a realistic possibility that the occupant or occupants would use the weapons against them."
Poole v. United States, 630 A.2d 1109, 1118 (D.C.App. 1993). See also Annot., Sufficiency of Showing of Reasonable Belief ofDanger to Officers or Others Excusing Compliance with "Knockand Announce" Requirement — State Criminal Cases, 17 A.L.R.4th 301 (1982).
It is common sense that any time authorities "signify the cause of . . . coming, and . . . make request to open doors," as the court in Semayne's Case phrased it, there will be at least some opportunity to destroy or conceal evidence. See 77 Eng.Repr. at 195. But this is the price that we pay for "the right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures. . . ." Amendment IV, United States Constitution.
As stated by the great William Pitt to the House of Commons in March 1763:
 "The poorest man may, in his cottage, bid defiance to all the force of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter — all his force dares not cross the threshold of the ruined tenement."
This principle is rooted in the common law of England, and therefore our common law, Carufel, 314 A.2d at 147.
Investigator David Sedberry of the Huntsville Police Department testified that police had been told by an informant that Jones had guns in the house. However, it is not illegal for citizens of the United States, except ex-felons, to have guns in the house. Exercise of the "right . . . to keep . . . arms," Amendment II, United States Constitution, does not lessen the protection against unreasonable searches and seizures. There is nothing in the record to indicate that the police knew that there was a person in the house who was in danger of imminent bodily harm. Neither was there any evidence that any police officer thought that he or she was in danger of immediate bodily harm. To the extent that the presence of guns alone was in itself considered an exigent circumstance, we overrule Beshears v. State, 593 So.2d 174 (Ala.Cr.App. 1991).
The mere presence of firearms within a dwelling does not mean that a person within was in immediate peril of bodily harm. This very issue was addressed by the Washington Court of Appeals in Jeter, supra. The court stated:
 "[T]he trial court's finding of exigent circumstances was based upon a belief that defendant could destroy the contraband and a concern for police safety based upon [the informant's] information that defendant kept a weapon. Neither provides a sufficient factual basis to rise to the level of exigent circumstances . . . [A] concern *Page 964 
for police safety must be based upon prior knowledge or direct observation that the subject of the search keeps weapons and that such person has a known propensity to use them. Although the belief that defendant kept weapons is supported by police testimony at the omnibus hearing that [the informant] told them defendant kept a gun by his bed, police had no prior information that defendant had a known propensity to use the gun in resistance other than a general belief that a convicted felon may have such a propensity. Defendant, however, had no prior convictions for acts of violence or violence against law enforcement officers in particular."
30 Wn. App. at 362-63, 634 P.2d at 314. (Footnotes and citations omitted.) As the California Supreme Court stated inPeople v. Dumas, 9 Cal.3d 871, 109 Ca.Rptr. 304, 309,512 P.2d 1208, 1213 (1973):
 "[O]ne of the primary purposes of [the knock-and-announce statute] . . . is to prevent possible violent responses that might be aroused in a startled and fearful householder suddenly confronted with unknown persons breaking into his home for unannounced reasons. The danger that such a confrontation will result in serious injury or death to the occupant, police officers, or innocent bystanders is obviously intensified when the householder is in possession of a firearm. Thus, where the police are aware of such a weapon, the case for requiring them to give notice of their authority and purpose becomes more rather than less compelling."
(Citations omitted.)
In this case, the officers had no knowledge of an emergency situation, and, therefore no exigent circumstances existed. The alleged information from an informant, even if true, provided no justification for failure to comply with the knock-and-announce requirement. The officers' actions violated the constitutional rights of the householder. Stewart, supra. See also State v. Furry, 31 Ohio App.2d 107, 286 N.E.2d 301
(1971).
All items found as a result of the patently illegal search of David Jones's residence are therefore not admissible in evidence because they are "the fruits of a poisonous tree."Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407,9 L.Ed.2d 441 (1963).
For the foregoing reasons, the convictions for the offense in counts I and II of the indictment must be reversed.
 II
The appellants next contend that there was insufficient probable cause to issue the search warrant for Shelia Jones's apartment, 3784 University Drive, Apt. 1826, in Huntsville.
The affidavit supporting the issuance of that warrant reads as follows:
 "Investigators have received information that Herbert 'Duck' Moore, Robbie Moore, and David Jones have been trafficking cocaine in the Huntsville area for some time. Herbert Moore is a convicted drug offender. Investigators have made numerous purchases of cocaine from H. Moore and R. Moore through the use of confidential informant(s). David Jones has been present during several sales of cocaine to the confidential informant(s). H. Moore purchased furniture which was delivered to Calais Forest Apartment, 3784 University Drive, Apt. 1826, which is listed to Shelia Jones, the daughter of David Jones. Information has been received from confidential reliable informant(s) that Shelia Jones recently went to the Miami, FL area to assist and/or arrange for the purchase of cocaine by Herbert Moore. Within twenty-four hours of this affidavit, Investigators observed Robbie Moore and Herbert Moore leave the residence at 3784 # 1826 University Drive and followed them to 3310 East Tucker Drive and they subsequently delivered a quantity of cocaine to a confidential reliable informant who then surrendered that cocaine to this investigator. Both subjects (Moores) were observed returning to the Calais Forest Apartments # 1826 and it is believed more cocaine may be present at that location. H. Moore has made taped statements indicating that he recently received cocaine for sale; those statements were made to a *Page 965 
confidential informant. The apartment was leased by Shelia Jones per the management and [Huntsville] Utilities shows Shelia Jones listed as the utility holder at that residence."
This court stated in Poole v. State, 596 So.2d 632, 641
(Ala.Cr.App. 1992):
 " ' "For a search warrant to be sufficient and satisfy the constitutional requirement of probable cause, the affidavit upon which it is based must state specific facts and circumstances which support a finding of probable cause." Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), cert. denied, 405 So.2d 962 (Ala. 1981).' Callahan v. State, 557 So.2d 1292, 1304 (Ala.Cr.App.), affirmed, 557 So.2d 1311 (Ala. 1989), cert. denied, 498 U.S. 881, 111 S.Ct. 216 [112 L.Ed.2d 176] (1990). 'Probable cause to search a residence exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)].' United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir.), cert. denied, 498 U.S. 901, 111 S.Ct. 259
[112 L.Ed.2d 216] (1990). . . . [T]here is no requirement of a 'showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.' Texas v. Brown, 460 U.S. [730] at 742, 103 S.Ct. [1535] at 1543, [75 L.Ed.2d 502 (1983)]. Additionally, 'where a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical rather than a common sense manner, and should resolve doubtful or marginal cases according to the preference to be accorded to warrants.' Maddox v. State, 502 So.2d 779, 785
(Ala.Cr.App. 1985), affirmed in part, remanded on other grounds, 502 So.2d 786 (Ala.), cert. denied, 479 U.S. 932, 107 S.Ct. 404, 93 L.Ed.2d 357
(1986)."
See also Witcher v. State, 629 So.2d 71 (Ala.Cr.App. 1993).
This court must look at the totality of the information that was supplied to the magistrate before the warrant was issued. We do not "restrict [our] review to the 'four corners' of the affidavit. United States v. Character, 568 F.2d 442 (5th Cir. 1978)." Wamble v. State, 593 So.2d 109, 110
(Ala.Cr.App. 1991).
There were sufficient facts to connect the appellants with the apartment on University Drive. Before selling cocaine to the informant earlier on the day the warrant was issued, Herbert Moore and David Jones had been at the University Drive apartment. After the sale they returned to the apartment. Herbert Moore had a prior conviction for selling drugs and Herbert and Robbie Moore had sold drugs to confidential informants on many occasions. Also, police had information that Shelia Jones, who leased the apartment, had been to Miami to assist in purchasing cocaine for Herbert Moore. Furthermore, the officer had established the reliability of this confidential informant. We hold that there was sufficient probable cause to issue the warrant for the apartment on University Drive.
The appellants also argue that the affidavit contained an intentional misrepresentation: that the informant had personally observed cocaine at the University apartment.
The appellants contend that the informant had not seen drugs at the apartment. The officer, however, did not make such a statement. He testified that he told the magistrate that the informant had not personally observed cocaine at the apartment.
 III
The appellants further contend that the court erred in denying their motion for a mistrial based on questions asked during David Jones's testimony about telephone records that the state had failed to disclose pursuant to the discovery motion. The discovery motion contained in the record was never ruled on. No adverse ruling has been shown and therefore, noncompliance with an order of court has not been shown. InLandreth v. State, 600 So.2d 440 (Ala.Cr.App. 1992), we stated:
 "The record, however, reveals no ruling on that motion. Accordingly, this issue has not been preserved. Review on appeal is limited to matters as to which the trial *Page 966 
court makes adverse rulings. Donahoo v. State, 552 So.2d 887 (Ala.Cr.App. 1989); Jackson v. State, 484 So.2d 1174 (Ala.Cr.App. 1985)."
600 So.2d at 445. Neither is this issue preserved for appeal.
For the reasons stated, the judgment of the circuit court is affirmed as to Count III of the indictment and reversed as to Counts I and II of the indictment. The cause is remanded to the Circuit Court for Madison County for proceedings not inconsistent with this opinion.
AFFIRMED AS TO COUNT III; REVERSED AND REMANDED AS TO COUNTS I AND II.
All the Judges concur except McMILLAN, J., who dissents without opinion.
[1] Indicted as Herbert "Duck" Moore.
[2] Shelia Jones was tried with the appellants and was found not guilty.