**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Levone Ray MADEN; John Paul Wilbon;
Geneva Gallegos, also known as Leann
Rael, Defendants–Appellees.**

No. 94–2260.

United States Court of Appeals,
Tenth Circuit.

Sept. 7, 1995.

Rehearing Denied Oct. 12, 1995.

Richard A. Friedman, Attorney, Department of Justice, Washington, DC, (John J. Kelly, United States Attorney, Tara C. Neda,

Assistant United States Attorney, Albuquerque, NM, with him on the brief), for plaintiff-appellant.

Albert B. Lassen of Lassen & Jaffe, Albuquerque, NM, filed a brief for defendant-appellee Levone Ray Maden.

Teresa E. Storch, Assistant Federal Public Defender, Albuquerque, NM, for defendant-appellee Paul Wilbon.

Adam G. Kurtz, Albuquerque, NM, for defendant-appellee Geneva Gallegos.

Before TACHA, SETH, and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

The government appeals the district court's suppression of evidence seized when Federal Bureau of Investigation ("FBI") agents entered the apartment of Defendants Levone Maden and Geneva Gallegos to execute an arrest warrant for Defendant Maden. The district court granted Defendants' motion to suppress on the grounds that the government had failed to demonstrate exigent circumstances to justify the FBI agents' decision not to comply with the knock and announce requirement of 18 U.S.C. § 3109 when they entered Defendants' apartment using a passkey. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and determining in our review that exigent circumstances exist in the particular facts of this case, reverse.

On March 28, 1994, FBI Special Agent Gregory M. Kuntz received a telephone call in his Albuquerque, New Mexico office from an anonymous informant calling from Texas. The informant told Agent Kuntz that "Rolex" Maden, a drug dealer wanted in Texas, had a quantity of cocaine at his apartment on Academy Boulevard in Albuquerque. The informant gave Agent Kuntz "Rolex" Maden's apartment number and telephone number.

Agent Kuntz checked the name "Rolex" Maden and determined that it was an alias of Defendant Levone Maden. Further, Agent Kuntz learned that Defendant Maden, a convicted felon with an extensive criminal history, was subject to an outstanding arrest warrant in Texas. Agent Kuntz contacted FBI Special Agent Macaluso of the FBI Fugitive Task Force. Agent Macaluso informed Agent Kuntz that he was familiar with Defendant Maden and knew that a weapon had been taken from Defendant Maden's residence by an Albuquerque Police Officer in August 1993, but that he was not arrested at that time. Agent Macaluso also told Agent Kuntz that Texas authorities were unwilling to extradite Defendant Maden.

Agent Kuntz called Texas authorities to determine whether they would extradite Defendant Maden if the FBI Fugitive Task Force arrested him on the Texas warrant. While awaiting response from Texas, Agent Kuntz obtained a rap sheet on Defendant Maden from the Albuquerque Police Department, and determined the address of Defendant Maden's apartment using the telephone number supplied by the anonymous informant.

At approximately 4:30 p.m. that afternoon, Agent Kuntz, Agent Macaluso, another FBI agent, and Detective Rock Hart of the Albuquerque Police Department met at Defendant Maden's apartment complex. The FBI agents confirmed that the apartment number the anonymous informant gave Agent Kuntz was leased to a "Joe Maden" and obtained a passkey from the apartment manager.

Shortly after the FBI agents arrived at the apartment complex, two cars drove into the parking lot. Detective Hart identified one driver as Defendant Maden. He believed the other driver was Brian Berry, a wanted fugitive. Detective Hart was concerned that Defendant Maden recognized him as he drove by. Defendant Maden and the man suspected to be Brian Berry entered Maden's apartment.

At that time, the FBI agents received radio notice that the Texas Authorities had sent a teletype to the FBI offices seeking Defendant Maden's arrest and extradition. The FBI agents began surveillance of Defendant Maden's apartment and the cars driven by Maden and the man identified as Brian Berry. Four more FBI agents arrived, two who were part of the FBI Fugitive Task Force, and two who were members of a SWAT team trained to work in dangerous situations. Finally, Detective Brian Sallee of

the Albuquerque Police Department arrived and with Detective Hart, briefed the FBI agents at the scene on their prior experience with Defendant Maden.

Detective Sallee informed the FBI agents that he had numerous contacts with Defendant Maden and had information that he had run a crack cocaine distribution operation known as the "Rolex" organization out of rooms he rented at a city motel. Detective Sallee also told the agents that he believed, based on an informant's report, that Defendant Maden had put a murder contract out on him two months earlier. Detective Sallee informed the agents that Defendant Maden's reported murder contract caused the Albuquerque Police Department to provide police protection to his family. Detective Hart informed the agents that he had seized a loaded semi-automatic hand gun from a motel room in which Defendant Maden was residing in March 1993. Detective Hart said that Defendant Maden acknowledged that the gun was his, but Detective Hart did not arrest him for a felon in possession of a firearm offense because he believed Defendant Maden might be of use as an informant.

By 5:30 p.m., the surveillance had revealed that a woman was in the apartment, in addition to Defendant Maden and the man believed to be Brian Berry. Based on the facts known to them, including the information relayed by Detectives Sallee and Hart of the Albuquerque Police Department, the FBI Fugitive Task Force members decided to make a no-knock, passkey entry into the apartment to arrest Defendant Maden in order to minimize the danger to the agents.

Using a cellular phone, one of the FBI agents telephoned Defendant Maden's apartment to divert one of the occupants. Simultaneously, Agent Macaluso used the passkey to open the apartment door, and the agents, wearing insignia identifying themselves as law enforcement personnel, entered the apartment, shouting, "police, police, hands on top of your head." When the FBI agents entered, Defendant Maden and Defendant

Paul Wilbon (mistakenly identified as Brian Berry) were sitting in the living room and Defendant Gallegos was in the bedroom. The agents saw a large amount of crack cocaine in two plastic bags on top of a hutch in the dining room in plain view. The agents arrested Defendants, secured the apartment, and obtained a search warrant. The resulting search of the apartment revealed additional cocaine and a gun.

The government indicted Defendants for possession with intent to distribute more than fifty grams of crack cocaine, 21 U.S.C. § 841(a). Defendants filed separate motions to suppress, contending, *inter alia*, that the agents' passkey entry of Defendants Maden's and Gallegos' apartment violated the knock and announce requirement of 18 U.S.C. § 3109. As a result of the violation, Defendants argued that all evidence, including the crack cocaine found in plain view in the apartment, must be suppressed under the "fruit of the poisonous tree" doctrine.

The district court granted Defendants' motions to suppress. The court determined that in order to enter Defendants' apartment without first knocking and announcing their authority as required by 18 U.S.C. § 3109, the agents had "to demonstrate with concrete, palpable facts that the defendant presents a danger to law enforcement officers in the context of resisting arrest with violence." [1] Applying that standard, the district court concluded that the agents "did not subjectively believe that Levone Maden presented a danger to them in the context of resisting arrest with violence." Further, the district court found that the agents' belief that arresting Defendant Maden was potentially dangerous was not objectively reasonable because "prior encounters between Maden and law enforcement officers demonstrated that Maden did not have a propensity to use violence against law enforcement officers ... [and] Maden's complete lack of criminal history involving violent offenses." Thus, the district court found that the gov-

---

1. The district court also held that Defendant Wilbon had standing to contest the agents' no-knock entry because he was a frequent overnight guest in the home of Defendants Maden and Gallegos, and therefore had a subjective expectation of privacy in their apartment that society would recognize as objectively reasonable. We do not consider the district court's standing determination, however, because the government does not appeal it.

ernment had failed to support its decision to enter the apartment in violation of 18 U.S.C. § 3109 with either a subjective belief or an objectively reasonable belief that Defendant Maden had a propensity to use violence based on concrete, palpable facts. Consequently, the district court granted Defendants' motions to suppress the evidence found in the apartment. This appeal followed.

On appeal, the government contends the district court erred in granting Defendants' motion to suppress. Specifically, the government argues that the district court applied the wrong legal standard to determine whether the agents' decision to dispense with the knock and announce requirement of 18 U.S.C. § 3109 was justified. Applying the correct standard, the government asserts there were exigent circumstances sufficient to excuse the agents' noncompliance with § 3109 because the agents had an objectively reasonable belief that there was an emergency situation based upon the particular facts of the case. We address the government's arguments in turn.

The government first contends that the district court erred in granting Defendants' motion to suppress because it applied the wrong legal standard when it determined that the government had failed to justify the FBI agents' decision to effect a no-knock passkey entry of the apartment. In its conclusions of law, the district court ruled that "[t]o invoke the 'physical peril to officer' exception [to § 3109], the government must demonstrate with concrete, palpable facts that the defendant presents a danger to law enforcement officers in the context of resisting arrest with violence." D.Ct. Order at 12. The government contends that the district court's "resisting arrest with violence" standard is not supported by our precedent, and required too high a level of certainty that Defendant Maden would violently resist the agents' entry into the apartment to excuse the agents' noncompliance with § 3109.

■ On appeal from a motion to suppress, we accept the district court's factual findings unless clearly erroneous, review questions of law de novo, and view the evidence in the light most favorable to the prevailing party. *United States v. Williamson*, 1 F.3d 1134, 1135 (10th Cir.1993). The question whether exigent circumstances exist to excuse compliance with 18 U.S.C. § 3109 presents a mixed question of fact and law which we review de novo. *United States v. Stewart*, 867 F.2d 581, 584 (10th Cir.1989).

■ The statutory standard which governs the agents' conduct in the instant case is contained in 18 U.S.C. § 3109, which codifies the knock and announce procedure. Section 3109 provides:

The officer may break open any outer or inner door or window or a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109. "The statute requires law enforcement officials to announce their authority and purpose, and to be denied admittance, before they break down the door of a house." *United States v. Remigio*, 767 F.2d 730, 732 (10th Cir.), *cert. denied*, 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985); *see also Wilson v. Arkansas*, —— U.S. ——, ——–——, 115 S.Ct. 1914, 1916–18, 131 L.Ed.2d 976 (1995) (tracing historical pedigree of common law knock and announce principle); *Miller v. United States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958); *United States v. Knapp*, 1 F.3d 1026, 1030 (10th Cir.1993). Section 3109 applies when officials attempt to enter a house to execute an arrest warrant, *Miller*, 357 U.S. at 309, 78 S.Ct. at 1195–96, and "to entries effected by use of a passkey." *Sabbath v. United States*, 391 U.S. 585, 590, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968).

■ "Compliance with § 3109 may be excused only when exigent circumstances exist." *Knapp*, 1 F.3d at 1030. "The term 'exigent circumstances,' in conjunction with the entry of a residence during the execution of a search warrant, refers to those situations where 'the officers believe there is an emergency situation and ... their belief is objectively reasonable.'" *Stewart*, 867 F.2d at 584 (quoting *United States v. Spinelli*, 848 F.2d

26, 29 (2d Cir.1988)). "The reasonableness of the officer's conduct hinges on the facts within their knowledge indicating exigency." *Id.* The government, however, bears the burden of establishing that exigent circumstances excused its noncompliance with § 3109. *See United States v. Parra,* 2 F.3d 1058, 1064 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993).

■ In the instant case, the district court did not require the government to demonstrate exigent circumstances to determine whether to excuse the agents' decision to dispense with the knock and announce requirement of § 3109. Rather, the district court required the government to "demonstrate with concrete, palpable facts that the defendant presents a danger to law enforcement officers in the context of resisting arrest with violence." D.Ct. Order at 12. However, the district court's "resisting arrest with violence" standard is not the law in our circuit. Rather, our precedent establishes that "[c]ompliance with § 3109 may be excused only when exigent circumstances exist." *Knapp,* 1 F.3d at 1030. Under this standard, the district court must determine not whether a particular defendant presents a danger in the context of "resisting arrest with violence," but whether the law enforcement officers in question held an objectively reasonable belief that an emergency situation existed to excuse compliance with § 3109. *E.g., Stewart,* 867 F.2d at 584; *United States v. Dahlman,* 13 F.3d 1391, 1398 (10th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994). Because the district court applied its "resisting arrest with violence" standard rather than the exigent circumstances test, we hold the district court applied the wrong legal test to determine whether the factual circumstances justified the agents' no-knock passkey entry of Defendant Maden's apartment.[2]

■ Next, the government contends that under the exigent circumstances standard the district court erred because the agents held an objectively reasonable belief there was an emergency situation excusing compliance with § 3109. We agree.

The FBI agents decided to dispense with the knock and announce requirement of § 3109 and make a no-knock passkey entry of the apartment to arrest Defendant Maden because they believed there were exigent circumstances based on particular facts within their knowledge. The FBI agents knew that Defendant Maden, a wanted fugitive, was in the apartment with a man the FBI agents believed to be Brian Berry, another wanted fugitive. Detective Hart of the Albuquerque Police Department informed the FBI agents that he had removed a loaded semi-automatic handgun from Defendant Maden's motel room residence eight months earlier. Detective Sallee informed the FBI agents that Defendant Maden had placed a murder contract out on him, a threat that the Albuquerque Police Department viewed with sufficient seriousness to provide police protection to Detective Sallee's family. Finally, the FBI agents had information that Defendant Maden, a known drug offender, had a quantity of cocaine in the apartment. Based on the sum of the particular facts surrounding the execution of the arrest warrant, we conclude that the FBI agents' belief that there was an emergency situation was objectively reasonable. *See United States v. Kennedy,* 32 F.3d 876, 882–83 (4th Cir.1994) (exigent circumstances excused DEA agents' decision to dispense with § 3109 requirements where agents knew that defendants had criminal drug records and were suspected of selling drugs, defendant had threatened to "kill[ ] a cop," and agents knew that drug dealers commonly carried guns), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995); *Dahlman,* 13 F.3d at

2. The district court cited our opinion in *Stewart* as authority for its conclusion of law that to justify noncompliance with § 3109, the government must "demonstrate with concrete palpable facts that the defendant presents a danger to law enforcement officers in the context of resisting arrest with violence." We do not read *Stewart* to require such a specific showing of exigency to support a no-knock entry to execute a search or arrest warrant. Instead, *Stewart* instructs that a court reviewing a police decision to dispense with the knock and announce requirement of 18 U.S.C. § 3109 must determine whether based on the "particular facts" within their knowledge, the officers had an objectively reasonable belief that there was an emergency situation. *Stewart,* 867 F.2d at 584.

1398 (police had objectively reasonable belief that no-knock entry was justified where police heard from informant that defendant wanted a shoot out with police, defendant had reached for weapon in past while being arrested, and defendant was alerted to officers' approach to execute search warrant by barking watch dog); *Spinelli,* 848 F.2d at 29–30 (police had objectively reasonable belief that no-knock entry was justified where police knew defendant had violent reputation, was subject to warrant for parole violation, and was believed to be involved in manufacturing volatile and explosive methamphetamine); *United States v. Ramirez,* 770 F.2d 1458, 1461 (9th Cir.1985) (police had objectively reasonable belief that no-knock entry was justified where police knew from teletype that suspects in a kidnapping and murder investigation were to be considered armed and dangerous). In applying the correct legal test, we find that the FBI agents in the instant case had an objectively reasonable belief that there was an emergency situation. *See Stewart,* 867 F.2d at 584. Consequently, we hold that the government established exigent circumstances sufficient to justify the agents' decision to dispense with the knock and announce requirement of 18 U.S.C. § 3109 and make a no-knock passkey entry of the apartment. We therefore REVERSE the district court's order granting Defendants' motions to suppress and REMAND for further proceedings consistent herewith.[3]

---

**3.** Defendant Wilbon filed a Motion to Strike Appendix C of the Government's Brief–In–Chief. Appendix C of the government's brief contains a copy of the search warrant and search warrant application that supported the search of Defendant Maden's apartment subsequent to his arrest. In reply, the government filed a Motion of the United States to Supplement Record on Appeal with Search Warrant and Accompanying Affidavit and Return. Because the government failed to offer either the search warrant or the search warrant application into evidence before the district court, we GRANT Defendant Wilbon's motion to strike Appendix C of the government's brief-in-chief, and DENY the government's motion to supplement the record on appeal.