# UNITED STATES COURT OF APPEALS
## Tenth Circuit
## Byron White United States Courthouse
## 1823 Stout Street
## Denver, Colorado 80294
## (303) 844-3157

Patrick Fisher                                          Elisabeth A. Shumaker
Clerk                                                   Chief Deputy Clerk

May 31, 1996


**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 95-3091 Jenkins v. Wood
     April 16, 1996 by The Honorable Wade Brorby


Please be advised of the following correction to the captioned decision:

The concurrence of The Honorable Robert H. Henry was not a correct copy. Enclosed is the correct concurrence.

Please replace the original concurrence with the corrected version.

Very truly yours,

Patrick Fisher, Clerk



Beth Morris
Deputy Clerk


encl

**95-3091, Jenkins v. Wood**

**HENRY**, Circuit Judge, Concurring

I concur in the majority's legally appropriate disposition. I write separately only to emphasize the apparent inappropriateness of the governmental action, which seems to push the envelope of "reasonableness" under the Fourth Amendment dangerously far.

The defense of the Kansas Bureau of Investigation and the City of Topeka rests upon the fact that neither Mr. nor Mrs. Jenkins could identify the officer or officers responsible for the egregious conduct that occurred in their home in the middle of the night. The defendants do a good job of pointing the finger at each other, and although this defense is legally successful in this case, it leaves quite a lot to be desired from the standpoint of the Fourth Amendment. Indeed, the district court also expressed its view that the Jenkins "have testified to facts which might support a claim of excessive force against one or more officers executing the search warrant." (Mem. and Order dated February 16, 1995, at 23.)

I agree with the district court's conclusion. The warrant, requested at 10:48 p.m. and executed at 12:30 a.m. (Mem. and Order dated February 16, 1995 at 7, 8), was served in a fashion that would have almost certainly been illegal under federal statutory law. See 18 U.S.C. § 3109 (requiring federal law enforcement officers to announce their authority and purpose prior to breaking doors or windows in the execution of a search warrant);

United States v. Stewart, 867 F.2d 581 (10th Cir. 1989) (applying 18 U.S.C. § 3109 to similar facts).

In determining Fourth Amendment "reasonableness" in excessive force cases, a court must balance "the nature and the quality of the intrusion on the individual's Fourth Amendment interests, against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotations and citations omitted). The governmental interests served by this commando approach are not apparent. The informant, who alleged Mr. Jenkins Jr. severely beat him, was presumably in the hospital and certainly out of harm's way. Although Mr. Jenkins Jr. had been seen exiting the upstairs apartment a month earlier and had stated that he lived there at that time, no evidence placed Mr. Jenkins Jr. in his parents' home on the night the raid occurred. Believing, as the officers did, that a separate upstairs apartment existed, one would assume the great likelihood of innocent people being present in, at least, the downstairs portion of the building. (Here, the Jenkins' two daughters and Mr. and Mrs. Jenkins Sr. themselves were present.) It seems odd that the home was not observed so that Mr. Jenkins Jr. could be apprehended without flash bangs and no-knock entries that could have resulted in the death of innocent occupants. Moreover, the search warrant specified items associated with the beating of the government's informant at a different location; such items could just have easily been searched for the following day and would not have required such an entry unless the younger Mr. Jenkins was known to be present in the

3

home.

These governmental interests do not outweigh Mr. and Mrs. Jenkins' Fourth Amendment right to be free from unreasonable, flash bang, no-knock, 12:30 a.m., governmental searches of their home. Noting that the standard of review requires this court to examine the factual record in the light most favorable to Mr. and Mrs. Jenkins and extend to them all reasonable factual inferences, the threatening language allegedly used by the police -- "You tell me where your son is or I will shoot." -- gives me further pause. (Mem. and Order dated February 16, 1995, at 11.)

Nevertheless, the majority opinion clearly states the law's requirements. I agree with the district court that Mr. and Mrs. Jenkins have "not identified sufficient evidence or pointed to any authority demonstrating that either Wood or Sabel may be liable for the such [sic] acts." (Mem. and Order date February 16, 1995, at 23.) Nor have they provided support for their claim that the City of Topeka had a custom or policy of using excessive force in the execution of search warrants. Courts cannot apportion § 1983 liability on a market share basis.

I believe the defendants would do well to reevaluate their policies (or lack thereof) -- whoever makes them and whatever they are -- regarding the use of such tactics in the execution of search warrants. See 1 Wayne R. LaFave, Search and Seizure § 1.4(e), at 96-97 & n.64. (2d ed. 1987); Wayne R. LaFave, Controlling Discretion by Administrative Regulations: The Use, Misuse, and Nonuse of Police Rules and Policies in Fourth

4

<u>Amendment Adjudication</u>, 89 Mich. L. Rev. 442 (1990) (both arguing that the creation and implementation of adequate standard procedures by law enforcement agencies would: (1) assist agents in making difficult, and often split second, decisions and (2) provide agencies and individual agents an affirmative defense to legal actions); <u>see also</u> 18 U.S.C. § 3109 (establishing the standard that federal law enforcement officers must meet before employing no-knock entries); <u>United States v. Maden</u>, 64 F.3d 1505 (10th Cir. 1995) (reversing the district court's suppression of evidence obtained from a no-knock search because the police satisfied the requirements of 18 U.S.C. § 3109); <u>Stewart</u>, 867 F.2d 581 (applying 18 U.S.C. § 3109 to facts similar to those presented in this case).

On this record, these plaintiffs, possibly wronged, may not rely on a constitutional tort for solace. Common law or state tort relief is the normal recourse for actions making as little sense as these.