**UNITED STATES of America, Plaintiff,**

v.

**James Donald MUSA, Jr. Defendant.**

No. 03–40061–01–JAR.

United States District Court, D. Kansas.

Oct. 24, 2003.

Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for Defendant.

### MEMORANDUM ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO SUPPRESS

ROBINSON, District Judge.

Defendant James Musa is charged in two counts with conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. This matter comes before the Court on Defendant's Motion to Suppress the evidence seized and any statement made in the night-time execution of a search warrant at his residence, during which entry was made without the officers first knocking and announcing their presence (Doc. 11). An evidentiary hearing was held on September 30, 2003, and the Court took the matter under advisement. The Court is now prepared to rule. For the reasons set forth in detail below, the Court grants Defendant's motion.

*Facts*

On December 3, 2002, at 3:05 p.m., a judge in the district court of Shawnee County, Kansas signed a search warrant for the residence of James Musa, finding probable cause to believe that methamphetamine or other controlled substances and evidence of the trafficking of controlled substances would be found there. The affiant, Officer Bruce Voigt, did not request a "no knock" warrant, and the judicial officer did not expressly authorize a "no knock" warrant.[1]

The search warrant was executed on December 5, 2002, at 1:22 a.m. by Topeka police officers, led by Officer Voigt. Officers executed the warrant by breaking the front door with a battering ram, and simultaneously announcing their presence. They neither knocked nor announced their presence before entering by force.

At the suppression hearing, Officer Voigt, who has been a narcotics officer for 10 of the 16 years he has served as a Topeka police officer, testified that his department prefers to execute search warrants after dark, so that the search team's approach will not be observed by the targets of the search. He further testified that although he prefers to execute search warrants by knock and announce, when circumstances dictate, he executes search warrants without first knocking and announcing. Officer Voigt testified that it is not his practice to apply to the judicial officer for a "no knock" warrant; nor

---

**1.** Although Officer Voigt does not dispute that he had knowledge of these circumstances prior to seeking the search warrant, he was not required to obtain a no-knock warrant to stay within constitutional bounds. *See Richards v. Wisconsin*, 520 U.S. 385, 396 n. 7, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (acknowledging that the practice of obtaining a no-knock war-

rant seems entirely reasonable, but not stating that it is constitutionally required); *Estate of Fuentes ex rel. Fuentes v. Thomas*, 107 F.Supp.2d 1288, 1298 (D.Kan.2000) (the constitutional inquiry is the reasonableness of the officers' decision evaluated as of the time they made the entry).

would he apply, because the manner of executing search warrants is a "tactical" decision best left to the officers executing the warrant.

Officer Voigt's decision to execute the search warrant without first knocking and announcing was based on the following facts, which were not only known to Voigt at the time he executed the search warrant, but also when he obtained the search warrant. First, the defendant was currently on supervised release after serving a prison sentence on a 2001 federal conviction for being a felon in possession of firearm. The defendant had been released from prison, and his term of supervised release had commenced in September 2002, just two and one-half months before the search warrant was obtained.

Second, based on a "Triple I" or "NCIC" check, the Defendant's criminal history included other arrests and convictions, which Voigt characterized as violent crimes. The Defendant had a 1989 felony auto theft conviction and a 1997 felony conviction for marijuana possession. In addition, from 1998 through 1999 the defendant had five arrests for a variety of charges, to wit: (1) 1998 arrest for domestic battery, obstruction and terroristic threat; (2) 1998 arrest for domestic battery, obstruction, possession of drug paraphernalia and battery on a law enforcement officer; (3) 1999 arrest for domestic battery and unlawful restraint; (4) 1999 arrest for domestic battery; (5) and 1999 arrest for possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and a traffic violation. Officer Voigt testified that he did not investigate the circumstances or disposition of the previous arrests.

Third, a confidential informant whom Officer Voigt had utilized since November 2002, told Voigt that the Defendant had stated that he was on federal "parole" and did not want to be caught with methamphetamine in the house during an in-home visit by his parole officer. Officer Voigt testified that this caused him concern about destruction of evidence.

In addition, Officer Voigt testified that his years as a narcotics officer have demonstrated that firearms are tools of the trade of drug traffickers. But, Voigt testified that he had no information from the confidential informant or otherwise, that the Defendant was currently in possession of any firearms. In fact, Voigt testified that officers had no information about what was in the house, other than information from the confidential informant that the drugs were sometimes kept in the house, and sometimes kept in the glove box of the car.

When the eight-person search team arrived at the Defendant's house in the early morning hours of December 5, 2002, they observed that there was only one light on, and it appeared to be in the living room on the front side of the house. The officers did not try to determine whether anyone was awake. Officer Voigt had information that the Defendant's girlfriend might be there with the Defendant. Upon execution of the search warrant, officers seized approximately 18 grams of methamphetamine.

## Discussion

The issue in this case is straightforward. Defendant does not contest the validity of the search warrant, but rather, the means of its execution. Where, as here, a court examines the actions of state law enforcement officers during the execution of a search warrant, it must evaluate those actions in light of the Fourth Amendment's reasonableness requirement.[2] Absent exigent circumstances, it is unreasonable for officers to enter a dwell-

2. *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

ing without first knocking and announcing their presence.[3] The government bears the burden of establishing exigency.[4]

The government argues that the totality of circumstances and facts known to the officers at the time of the execution of the search warrant satisfies the Fourth Amendment reasonableness standard for execution without knocking and announcing, because the Defendant had a criminal history involving crimes of violence, a history of illegally possessing firearms, and because Defendant was on supervised release, he had incentive to dispose of the evidence. The government urges that these facts are distinguishable from those in cases cited by the Defendant, noting that someone on supervised release or parole status has a diminished expectation of privacy for purposes of Fourth Amendment analysis.

Defendant argues that the officers lacked any reasonable basis to execute the search warrant without knocking and announcing. Admittedly, the officers had no current information that the Defendant had or possessed firearms. Defendant argues that the principles in the seminal case of *Wilson v. Arkansas* [5] have been violated in that the government has failed its burden of proving exigent circumstances existed at the time the search warrant was executed. Defendant contends that Officer Voigt's admission that the officers knew nothing about what was in the Defendant's house does not prove exigency or demonstrate that the Defendant currently presented a risk of violence. Defendant further argues that there was not a sufficient showing that a likelihood of destruc-

tion of evidence was exigent, for officers admittedly did not know whether the drugs would be in the house or in Defendant's car.

■ As a threshold matter, the Court addresses the government's claim that a defendant on supervised release, probation or parole has a diminished expectation of privacy under the Fourth Amendment. The Supreme Court has held that a probation agreement containing a provision allowing the search of a probationer's residence diminishes the probationer's reasonable expectation of privacy in his residence and thus, a warrant is not required in a probation search.[6] A probationer's home, however, remains protected by the Fourth Amendment against unreasonable searches.[7] The government does not cite, nor did the Court find, cases that extend a probationer's diminished expectation of privacy to elimination of the knock and announce requirement, and the Court declines to do so in this case.

The knock and announce requirement under federal law is codified in 18 U.S.C. § 3109. This statute provides that a law enforcement officer may:

> break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of a warrant.

The warrant in this case was issued by a state court judge and executed by Topeka city police officers. Under these circum-

---

3. *Id.* at 934, 115 S.Ct. 1914.

4. *Id.*

5. 514 U.S. at 927, 115 S.Ct. 1914.

6. *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). *See Unit-*

ed States v. Lewis, 71 F.3d 358, 361 (10th Cir.1995) (parolees and probationers are treated identically for Fourth Amendment purposes).

7. *See Griffin v. Wisconsin,* 483 U.S. 868, 874–75, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

stances, § 3109 does not directly apply. But, the Supreme Court has incorporated the requirements of the statute into the Fourth Amendment's reasonableness doctrine.[8] Thus, the court should apply standards similar to those of § 3109.[9]

■ As determined in *Richards v. Wisconsin*, the fact that this was a drug investigation does not by itself justify a no-knock approach, although such investigations "may frequently present circumstances warranting a no-knock entry."[10] "Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement."[11]

The circumstances which justify a no-knock entry should provide a substantial justification. In *Richards*, the Supreme Court noted:

> While it is true that a no-knock entry is less intrusive than, for example, a warrantless search, the individual interests implicated by an unannounced, forcible entry should not be unduly minimized. As we observed in *Wilson v. Arkansas*, 514 U.S. 927, 930–32, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), the common law rec-

ognized that individuals should be provided the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry. These interests are not inconsequential. Additionally, when police enter a residence without announcing their presence, the residents are not given any opportunity to prepare themselves for such an entry.... The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed.[12]

Thus, the exigent circumstances should warrant "a reasonable suspicion [by the officers] that knocking and announcing their presence ... would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."[13] The constitutional inquiry is the reasonableness of the officers' decision evaluated as of the time they made the entry.[14] This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.[15]

■ The government argues that the defendant's criminal history demonstrates

---

8. *See Wilson v. Arkansas*, 514 U.S. at 934, 115 S.Ct. 1914.

9. *U.S. v. McCloud*, 127 F.3d 1284, 1286 n. 1 (10th Cir.1997); *U.S. v. Smith*, 63 F.3d 956, 962 (10th Cir.1995), *judgment vacated on other grounds*, 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). *See State v. Shively*, 268 Kan. 589, 999 P.2d 259 (2000) (Kansas courts recognize that unannounced entry to execute a search warrant violates the United States Constitution unless exigent circumstances present).

10. 520 U.S. at 394, 117 S.Ct. 1416 (1997).

11. *Id.*

12. *Id.* at 393 n. 5, 117 S.Ct. 1416. *See also, Jones v. United States*, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958) ("[I]t is

difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home"); *Coolidge v. New Hampshire*, 403 U.S. 443, 477, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (midnight entry into a home was an "extremely serious intrusion"); *United States v. Gibbons*, 607 F.2d 1320, 1326 (10th Cir.1979) (recognizing the common law's "strong aversion" to nighttime searches, particularly such searches of a home).

13. *Richards*, 520 U.S. at 394–95, 117 S.Ct. 1416.

14. *Id.* at 395–96 and n. 7, 117 S.Ct. 1416.

15. *Id.* at 394, 117 S.Ct. 1416.

reason to believe he had a propensity for violence, and that the officers' safety would be jeopardized by first knocking and announcing their presence. The Defendant had a history of two felony convictions: a 1989 conviction for auto theft and 1997 conviction for possession of marijuana. Defendant was on supervised release on a 2001 felon in possession conviction. In addition, he had a history of arrests in 1998 and 1999 for domestic battery, including an arrest for battery on a law enforcement officer in one of the 1998 domestic dispute arrests. Though there is no question Defendant had a history of arrests for domestic battery and one battery on a law enforcement officer in connection with a domestic battery incident, the Court is not persuaded that this alone demonstrates a propensity for violence or that he presented a danger to officers sufficient to excuse the knock and announce requirement, as discussed *infra*. The Tenth Circuit has held that under the exigent circumstances standard, the court must determine not whether a particular defendant presents danger in the context of resisting arrest with violence, but whether the law enforcement officer in question held an objectively reasonable belief that an emergency situation existed.[16]

The government further contends that the fact that Defendant was on supervised release on a felon in possession of a firearm conviction constituted reasonable suspicion that a firearm would be present at the time of the search. However, in cases in which there was some indication that a firearm was present in the residence to be searched, this information alone has been held insufficient to justify the failure to knock and announce.[17] Although the officers had ascertained that Defendant had been previously convicted of possessing a firearm after having previously been convicted of a felony, there were no specific grounds to indicate that Defendant currently possessed a firearm or that a firearm was present in the residence to be searched. While the confidential informant used by the police had made at least one controlled purchase from Defendant and observed him sell methamphetamine on at least 15 occasions, there was no current information that Defendant possessed a firearm. Of course, the officer's lack of knowledge does not supply a reasonable basis of exigent circumstances.

The government asks the Court to consider several cases where officers feared for their safety. In *Bodine v. Warwick*,[18] the Fourth Circuit upheld as reasonable an officer's belief that defendant was planning to use violence so as to avoid complying with the visitation requirement of a domestic court order, where the defendant had previously threatened police and had slammed the door in the officer's face. In *United States v. Murphy*,[19] the Eighth Circuit found an exigency existed where an

---

16. *United States v. Maden*, 64 F.3d 1505, 1509 (10th Cir.1995) (where the court found a demonstration of exigency: defendant was a fugitive and was in the house with another fugitive; defendant was a known drug offender and the officers had information he had a quantity of cocaine in apartment at that time; eight months earlier an officer had removed a loaded weapon from defendant's motel room, defendant had placed a murder contract on officer, and officer's family was under police protection.).

17. *See United States v. Moore*, 91 F.3d 96, 98 (10th Cir.1996); *United States v. Bates*, 84 F.3d 790, 795 (6th Cir.1996); and *United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir.1993); *see also United States v. Granville*, 222 F.3d 1214, 1219 (9th Cir.2000) (generalized fears that drug dealers keep weapons is not enough to establish exigency).

18. 72 F.3d 393, 397 (3rd Cir.1995).

19. 69 F.3d, 237, 243 (8th Cir.1995), *cert. denied* 516 U.S. 1153, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996).

informant's information indicated that the defendant sometimes carried a weapon, there were weapons in the house, defendant had threatened to kill a Jew or blow up a synagogue that night, and that he was on parole from a second-degree murder conviction. In that case, officers also feared for the safety of neighbors because the houses in defendant's neighborhood were located close to one another. In *United States v. Jewell*,[20] the First Circuit found an exigency existed because of defendant's history of arrest and conviction for unidentified violent crimes, coupled with the presence of a pit bull at defendant's house. The facts of those cases, none of which are from the Tenth Circuit, are clearly distinguishable from this case. In each case, officers executing the warrant had more than mere evidence of defendant's criminal history-there was also current evidence of a propensity for violence, involving weapons or dogs, or of particularized threats made by the defendants.

Nor does Tenth Circuit precedent support the government's position. As support for his argument, Defendant cites to *United States v. Stewart*,[21] in which the court stated:

> The conclusion of exigency ... must be especially clear ... where there was no knock or warning whatsoever, where there was no information as to who was in the house, where the destruction of physical property took place, and where the occupants could be injured as a result of the entry. We must determine whether the officers, after considering the *particular* facts regarding the premises to be searched and the circum-

stances surrounding the execution of the warrant, could reasonably have decided that an urgent need existed for such an entry into the premises.[22]

In *Stewart*, the officers believed the defendant was dangerous because an informant under the influence of marijuana told another informant he once saw the defendant with a semi-automatic pistol.[23] Based on little more than that statement, the Denver S.W.A.T. team forcibly entered the defendant's home, without knocking and announcing their presence, used a battering ram and detonated a stun grenade upon entry.[24] The court concluded that the circumstances surrounding the execution of the warrant were not sufficiently exigent to justify the type of forcible entry deployed by the S.W.A.T. team. First, the exigent circumstances sought to be relied on existed and were known to officers at least 24 hours before the warrant was executed, and thus the method of entry was not formulated in response to an emergency, but instead was carefully planned without specific information well in advance of the time the warrant was obtained.[25] Second, the facts offered in support of the officers' decision to execute a no-knock warrant were not specific enough to justify their failure to comply with the knock and announce requirement.[26]

Clearly, the information regarding Defendant's dangerousness is not as scant as the information in *Stewart*. But in those cases where the failure of law enforcement officers to follow the requirements of the knock and announce rule has been upheld, the police were in possession of more specific facts regarding the premises to be

20. 60 F.3d 20, 24 (1st Cir.1995).

21. 867 F.2d 581, 584 (10th Cir.1989).

22. *Id.* (citing *Jones v. United States,* 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

23. *Id.* at 585.

24. *Id.* at 583.

25. *Id.* at 584–85.

26. *Id.* at 585.

searched or its occupants that demonstrated their compliance would be dangerous or imprudent. In *United States v. Basham,*[27] the affidavit supporting a no-knock warrant showed that defendant had been charged with assault and two weapons violations, was paranoid and had violent tendencies, had stated to an informant that he would not go back to jail at any cost, and previously had approached the door of his residence with a sawed-off shotgun. Defendant argued that the information in the affidavit was based on stale information from an earlier affidavit and that there was no new information regarding his violent tendencies, and therefore, no reason to suspect that a no-knock warrant was needed. Defendant argued that for the court to simply assume that the situation would be dangerous enough to justify a no-knock warrant was "dangerously close" to establishing a criminal category exception, as prohibited by the Supreme Court in *Richards.*[28] Noting that it would be an overgeneralization to conclude that because a person is engaged in the drug trade, that person is likely to be dangerous and possess firearms, the court held that "it would not be an overgeneralization to conclude that because a certain person involved in the drug trade exhibited violent tendencies, was armed with a sawed-off shotgun, declared that he would not go to prison at any cost, and had a violent criminal history eight months previous, the same person might possess weapons and hold the same views at the present time,

given that he was still involved in the drug trade."[29] These facts were sufficient to support a reasonable suspicion that knocking and announcing would be dangerous or futile, or would inhibit the effective investigation of the crime, despite the exaggeration of defendant's criminal history in the affidavit submitted in support of the no-knock warrant.

In *United States v. Gay,*[30] the Tenth Circuit found that exigent circumstances justified a forced entry where the defendant had participated in a police shoot-out two years prior to his arrest and the officers had information from multiple informants that defendant had a weapon at all times. In *United States v. King,*[31] the court found exigent circumstances where the suspect was a gang member known to carry firearms, had an outstanding arrest warrant for failure to appear at a sentencing on a felony conviction involving weapons, and an informant told police that the suspect had recently threatened her boyfriend with a gun.

Similarly, in *United States v. Guebara,*[32] Judge Belot found a no-knock search warrant was justified where the defendant had a police record which included carrying and possessing firearms coupled with an informant's statement that another resident had made recent statements that he wanted to kill police officers, had bragged about shooting police officers and had made statements about having a firearm and trying to obtain another. Other jurisdictions have made similar findings.[33]

---

27. 268 F.3d 1199, 1205 (10th Cir.2001).

28. *Id.* at 1205.

29. *Id.* at 1205–06.

30. 240 F.3d 1222, 1229 (10th Cir.2001).

31. 222 F.3d 1280, 1284–85 (10th Cir.2000).

32. 80 F.Supp.2d 1226, 1228 (D.Kan.1999).

33. *See, e.g., United States v. Hawkins,* 139 F.3d 29, 32 (1st Cir.1998) (defendant's criminal history included convictions for armed robbery assault with a dangerous weapon and a firearms violation; officer had knowledge of a recent armed action by defendant and suspicion that defendant was aware of the police interest in him); *United States v. Spinelli,* 848 F.2d 26, 30 (2nd Cir.1988) (suspect had a past history of firearm possession and a reputation for violence, agents conducted a lengthy sur-

■ The Court believes the facts described in this case are clearly distinguishable and would not be accepted by the Tenth Circuit as exigent circumstances. As stated above, there was no evidence that Defendant currently possessed a firearm or that there were weapons on the premises. There was no particularized evidence of threats to law enforcement officers or threats that Defendant would respond to law enforcement activity with violent conduct. There was no evidence that Defendant was currently a methamphetamine user or given to violent or irrational behavior. No surveillance was conducted to determine if the house had been fortified or if the occupants were monitoring activity in the surrounding area. No effort was made to determine who was in the house at the time the entry was made. Although a defendant's criminal history can clearly be a contributing factor, without additional evidence specifying the risk to officers in this situation, the Court concludes in this case there was no reasonable suspicion that Defendant would endanger the officers if they knocked and announced their presence prior to executing the search warrant.[34]

The Court further notes that Officer Voigt testified that he was concerned for officer safety because of Defendant's criminal history and, because in his experience, firearms are tools of the trade of drug traffickers. In *Richards,* the Supreme Court overruled any "blanket" exceptions to the knock and announce rule in drug cases. The Tenth Circuit has also held that the exceptions to the knock and announce requirement should not "swallow the rule."[35] This could occur in this case if Defendant's criminal history, without additional evidence, was sufficient to establish reasonable suspicion of exigent circumstances.[36]

A similar flaw exists in the government's argument that Defendant's status on supervised release created a risk of destruction of evidence. There is no reason to assume that someone on supervised release is more likely to destroy evidence of their criminal activity than someone else. And, Defendant's statement that he "could not" be caught by his parole officer does not demonstrate a particularized risk that he would destroy evidence. In fact, the affidavit supporting the warrant states that the informant advised Officer Voigt that "it is common for defendant to keep the methamphetamine in the glove box of his car even when he is at home. . . . [and] that [Defendant] is still on Federal parole [sic] and does not want to get caught with

---

veillance of the suspect's house and believed suspect was aware of their surveillance, chemicals on premises were flammable and explosive and children were present in the neighborhood); *United States v. Penman,* 2001 WL 670922 (D.Utah, May 3, 2001) (no-knock warrant justified where defendant's criminal history revealed a pattern of propensity for violence, including arrests for homicide, aggravated robbery, carrying a concealed weapon, and drug related offenses; further evidence that defendant was a gang member); *State v. Jones,* 358 N.J.Super. 420, 818 A.2d 392 (N.J.Super.A.D.2003) (fact that defendant in drug search warrant had prior arrest for assault and possession of a weapon did not provide reasonable suspicion justifying a no-knock warrant where suspect was

never convicted of assault charge and police had on three previous occasions conducted controlled drug buys at defendant's residence using confidential informant who never suggested weapons were present).

34. *See United States v. Flower,* 2001 WL 1013317, *4 (D.Kan. July 26, 2001) (although court was persuaded that methamphetamine manufacturing materials are dangerous, without additional evidence specifying risk to officers, no exigency existed justifying no-knock search).

35. *See Moore,* 91 F.3d at 98.

36. *Id.*

the methamphetamine in his house during an in home visit by his parole officer." If such a general statement or desire to avoid detection is an exception, then it is also an exception that would swallow the rule, and as Defendant characterizes, is "nothing more than a dressed-up argument that destruction of evidence is grounds to ignore the knock and announce rule in all drug cases."

The exigency test requires the police to have particularized information that a risk of destruction of evidence existed. Here, there is no evidence that Defendant was inclined to destroy evidence; in contrast to *Richards,* where the suspect slammed the door and fled toward the back of a hotel room when he saw a uniformed officer.[37] There is no evidence that the methamphetamine was stored near a sink or toilet; nor is there any evidence that the anticipated quantity of drugs exceeded that which could be disposed of in a few seconds. In fact, the affidavit in support of the warrant stated that the informant told the officers that the drugs were commonly kept in the glove box of Defendant's car, even when he was at home.

Finally, the Court notes that the exigent circumstances sought to be relied on were matters that were known and that existed prior to issuance of the warrant.[38] Officer Voigt did not report any additional factors at the time of execution of the warrant that would constitute "an objectively reasonable belief that an emergency situation existed," [39] justifying a no-knock entry. There is no evidence that Defendant knew law enforcement officers were present.

Although a light appeared to be on in the living room, the officers did not attempt to determine if anyone was up and moving around in the house.

The Court does not believe the government has made a particularized showing of exigent circumstances which provides a justification under the Constitution for the no-knock entry under the circumstances of this case. The Court is acutely aware of the dangers police officers face in executing search warrants, particularly in drug cases. However, the knock and announce rule is not a mere technicality, but "is of the essence of the substantive protections which safeguard individual liberty." [40] Therefore, the Court shall suppress the evidence obtained as a result of the search. To the extent the statements made by Defendant are not attenuated from the illegal method of entry when the search commenced, they shall also be suppressed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion to suppress (Doc. 11) is GRANTED.

**IT IS SO ORDERED.**

---

37. 520 U.S. at 391, 117 S.Ct. 1416.

38. *See Stewart,* 867 F.2d at 585 (it is difficult to understand how the circumstances were "exigent" when the officers had an entire day to formulate a response to those circumstances).

39. *Moore,* 91 F.3d at 98 (quoting *United States v. Maden,* 64 F.3d at 1509).

40. *Ker v. California,* 374 U.S. 23, 49, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (Brennan, J., dissenting in part).