HENRY, Circuit Judge,
dissenting.
In choosing to use no-knock entries, rather than simply waiting until a suspect leaves the curtilage of his home, officers may damage property and endanger themselves, innocent family members, and others. Those risks, as well as the heightened protection that Anglo-American law has long afforded the home, explain why these entries should be the exception rather than the rule.
Here, in my view, the district court properly concluded that the government failed to establish the exigent circumstances necessary to excuse compliance with the Fourth Amendment’s knock and announce requirement. The district court’s opinion is exceptionally thorough and well-reasoned, and it properly rejects the government’s attempted justifications for the no-knock entry. Accordingly, I would affirm the district court’s decision granting Mr. Musa’s motion to suppress.
Initially, I note that we owe considerable deference to the district court, which acquired, in Judge Posner’s words, “a feel for the ease.” Cook v. City of Chicago, 192 F.3d 693, 697 (7th Cir.1999). Although the court’s ultimate determination that exigent circumstances did not justify the no-knock entry is a legal question that we review de novo, United States v. Dahlman, 13 F.3d 1391, 1398 (10th Cir.1993), we examine the district court’s factual findings only for clear error. Id. Moreover, we must consider the evidence in the light most favorable to the district court’s determination. *1217 United States v. Rice, 358 F.3d 1268, 1273-74 (10th Cir.2004).
Here, the district court determined that: [t]here was no evidence that [Mr. Musa] currently possessed a firearm or that there were weapons on the premises. There was no particularized evidence of threats to law enforcement officers or threats that [Mr. Musa] would respond to law enforcement activity with violent conduct. There was no evidence that [Mr. Musa] was currently a methamphetamine user or given to violent or irrational behavior. No surveillance was conducted to determine if the house had been fortified or if the recipients were monitoring activity in the surrounding area. No effort was made to determine who was in the house at the timé that entry was made.
United States v. Musa, 288 F.Supp.2d 1205, 1213 (D.Kan.2003). These factual findings are not clearly erroneous. As a result, we must accept them in making, the Fourth Amendment determination of the reasonableness of the no-knock entry into Mr. Musa’s home.
The government has prudently elected not to challenge the district court’s holdings that: (1) officers could not rely upon the fact that Mr. Musa was on supervised release to eliminate the knock and announce requirement; see id. at 1208 (“The government does not cite, nor did the Court find, cases that extend a probationer’s diminished expectation of privacy to elimination of the knock and announce requirement, and the Court declines to do so in this case.”); and (2) “the fact that this was a drug investigation does not by itself justify a no-knock approach, although such investigations ‘may frequently present circumstances warranting a no-knock entry.’ ” Id. at 1209 (quoting Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)).
Instead of relying on the fact that Mr. Musa was on supervised release and that he was a suspect in a drug investigation, the government now relies on his criminal history. The majority accepts this argument, but I cannot. In my view, the evidence presented by the government is insufficient to justify the no-knock entry.
As the majority states, before they may dispense with the knock and announce requirement, law enforcement officers “must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.” Richards, 520 U.S. at 394, 117 S.Ct. 1416. The standard is an objective one. See United States v. Stewart, 867 F.2d 581, 584 (10th Cir.1989) (noting that officers’ suspicion of exigent circumstances must be “objectively reasonable”); see also United States v. Dahlman, 13 F.3d 1391, 1398 (10th Cir.1993) (“The term ‘exigent circumstances’ requires that the officers hold an objectively reasonable belief that there is an urgent need for immediate action”).
Accordingly,, the testimony of a particular officer regarding exigent circumstances may not satisfy that objective standard. Here, for example, Officer Voigt’s testimony that “he was concerned because of the lack of police knowledge of the inside of the residence” and that “this lack of intelligence ‘itself is a dangerous situation because you don’t know what to expect,’ ” Maj. op. at 1211 (quoting Aplt’s App. at 68), does not establish exigent circumstances sufficient to justify the no-knock entry. The statement is tautological and would apply to virtually all warrants.
I agree that a suspect’s criminal history may be relevant to the determination of whether a no-knock entry is justified. *1218 However, that does not mean that every suspect with a prior record of arrests or convictions- has forfeited his Fourth Amendment right to have the police officers knock and announce before they enter his home. Instead, in my view, in order to justify a no-knock entry, the officers must evaluate the particular facts surrounding a suspect’s prior record. This court must then review that evaluation to determine whether it meets the objective standard necessary to justify a no-knock entry.
In this case, the particular facts surrounding Mr. Musa’s record include underlying convictions not for crimes of violence toward law enforcement officers but for stealing a car and possessing marijuana. The subsequent crime for which he was on supervised release was possession of a firearm by a felon, a status crime relating to these non-violent offenses.
I acknowledge that Mr. Musa had five arrests in 1998 and 1999. However, these arrests do not appear to have led to prosecution or conviction. In the absence of a particularized inquiry into the circumstances surrounding these arrests, we should be wary of reaching definitive conclusions about a suspect’s dangerous tendencies. I would therefore hesitate to characterize Mr. Musa as a “hardened criminal.” Id. at 1214.
Moreover, in the case on which the majority relies'to justify reliance on a suspect’s criminal history, United States v. Colonna, 360 F.3d 1169, 1176 (10th Cir.2004), we noted that the defendant had been convicted of two felonies and that his twenty-four arrests “were for a variety of offenses that could make a reasonable officer apprehensive, including strong arm robbery, aggravated assault, assault on a police officer, resisting arrest, aggravated robbery with a firearm, failure to stop for a police officer, and terroristic threats.” Id. Moreover, the government identified additional evidence of the defendant’s violent tendencies. In particular, the affiant stated that the defendant had been “very aggressive with police officers in the past” and had even “hit, punched or otherwise attacked” certain officers. Id. The affiant also stated that children had been observed playing in the area. Finally, we noted “the expressed fear of a concerned citizen that Mr. Colonna would retaliate violently.” Id. Thus, as the majority observes, the defendant had a “significant criminal history of violence.” Maj. op. at 1213.
Here, the officers did not obtain the same kind of particular evidence of violent tendencies. There is no direct evidence that Mr. Musa had been “very aggressive” with police officers, id, or that any citizen had expressed fear of violent retaliation from him. Instead, the officers relied only upon a cursory background search. In his testimony at the hearing on the motion to suppress, Officer Voigt acknowledged that he did not conduct any inquiry concerning the facts underlying Mr. Musa’s prior convictions: Aplt’s App. at 53-54. As to Mr. Musa’s prior arrests, Officer Voigt acknowledged that none of those arrests led to criminal prosecutions and that he had not reviewed any of the police reports to determine what had actually occurred when Mr. Musa had been arrested. Id. at 55. Officer Voigt further acknowledged that additional inquiry regarding the facts underlying Mr. Musa’s prior arrests would not have affected his conclusion that officers’ safety would be threatened by knocking and announcing their presence. In particular, Mr. Musa’s attorney asked Officer Voigt, “Would it have made any difference to you, Officer, if you had investigated, say, the arrest on battery on a law enforcement officer and the battery included nothing more than spitting on the officer?” Aplt’s App. at 69. Officer Voigt replied, “No it would not.” Id. at 70.
*1219 In my view, that testimony demonstrates that the officers here made the kind of categorical assessment of dangerousness that the Supreme Court has condemned. “[T]he fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case.” See Richards, 520 U.S. at 394, 117 S.Ct. 1416.
Additionally, my review of our prior knock and announce cases indicates that we have found exigent circumstances only when there is substantially more evidence that there is in this case that a no-knock entry would jeopardize officer safety or risk the destruction of evidence. See, e.g., United States v. Rhiger, 315 F.3d 1283 (10th Cir.2003) (smell of methamphetamine cooking and risk of explosion); United States v. Gay, 240 F.3d 1222 (10th Cir.2001) (information that defendant had jumped bail, had been involved in a police shootout, and was armed at all times); United States v. King, 222 F.3d 1280 (10th Cir.2000) (information that defendant sold drugs, belonged to a gang, had previously displayed a willingness to use his gun, and that another drug dealer might be present in the house with a gun); United States v. Maden, 64 F.3d 1505, 1509-10 (10th Cir.1995) (information that defendant was a wanted fugitive, that another fugitive was present in the house, that officers had removed a loaded semi-automatic handgun from the defendant’s motel room eight months earlier, that the defendant had placed a murder contract on an officer, and that he had a quantity of cocaine in his apartment).
In my view, the facts of the case at hand demonstrate the continuing importance of this court’s observation in United States v. Stewart, 867 F.2d 581, 584 (10th Cir.1989), that the showing of exigent circumstances necessary to dispense with the knock and announce requirement must be “especially clear.” To be sure, in Stewart we required such a clear showing of exigency because “there was no knock or warning whatsoever^] ... there was no information as to who was in the house[;] ... the destruction of physical property took placet;] and ... the occupants of the residence could be injured as a result of the entry.” Id. In a case decided after Stewart, the Supreme Court has held that one of these factors— the fact that the no-knock entry caused the destruction of property — is not relevant to the determination of whether the no-knock entry was justified. See United States v. Ramirez, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). In another post-Stewart case, the Court has stated that the showing required of the government is “not high,” Richards, 520 U.S. at 394, 117 S.Ct. 1416, but the Court cautioned that “the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.” Id. at 394-95, 117 S.Ct. 1416. Thus, if the knock and announce requirement is to remain the rule rather than the exception, we must still be able to tell the difference between the ordinary risks to officer safety in serving search warrants and the risks to officer safety in instances in which a no-knock entry is justified. Here, the government has not established such a clear difference.
Moreover, I remain concerned about the prevalence of no-knock entries in Kansas. As I noted in United States v. McCloud, 127 F.3d 1284, 1288 n. 3 (10th Cir.1997), this court “seem[s] to be reviewing the actions of Kansas police executing ‘knock and announce’ warrants with some frequency.”
There are several problems with this kind of entry. First, as cases have shown, innocent bystanders, family members, and *1220 the officers themselves can be in grave danger. See Miller v. United States, 357 U.S. 301, 313 n. 12, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) (stating that “Compliance [with the knock and announce requirement] is also a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder”); Holland v. Harrington, 268 F.3d 1179 (10th Cir.2001) (considering officers’ entry into a home during the investigation of a misdemeanor, during which laser sights were trained on children at play). Second, mistakes can occur, and the wrong house can be entered. Third, substantial property damage can occur, and the consequences will frequently fall on third parties. Accordingly, these entries should be made only when the circumstances are truly exigent.
Finally, the Supreme Court has emphasized that the Fourth Amendment draws “a firm line at the entrance to the house,” and “[t]hat line ... must be not only firm but also bright.” Kyllo v. United States, 533 U.S. 27, 40, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (quotation marks omitted). That is because “the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.” United States v. United States Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Thus, in “the often competitive enterprise of ferreting out crime,” Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), police officers must “strike[] the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries.” Richards, 520 U.S. at 394, 117 S.Ct. 1416.
Here, by relying only upon Mr. Musa’s prior record and failing to undertake a particularized inquiry into the risks of no-knock entry, the officers did not strike the appropriate balance. I would therefore affirm the district court’s decision granting Mr. Musa’s motion to suppress.