F I L E D
United States Court of Appeals
Tenth Circuit

MAR 21 2005

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

JAMES DONALD MUSA, JR.,

Defendant - Appellee.

No. 03-3343

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 03-CR-40061-JAR)**

---

Eric F. Melgren, United States Attorney, Wichita, Kansas (John A. Drennan, Attorney, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C., with him on the briefs), for Plaintiff - Appellant.

Ronald E. Wurtz, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the brief), Topeka, Kansas, for Defendant - Appellee.

---

Before **KELLY** , **HENRY** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

The district court held that police officers lacked adequate grounds to

conduct a no-knock entry of Defendant's home to execute a search warrant, and

suppressed all evidence obtained during the search. The Government appeals. We exercise jurisdiction under 18 U.S.C. § 3731 and reverse.

"In reviewing a district court's ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party and accept the district court's findings of fact unless they are clearly erroneous." *United States v. Oliver*, 363 F.3d 1061, 1065 (10th Cir. 2004) (internal quotation marks omitted). "The ultimate question of whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review de novo." *Id.* (internal quotation marks omitted).

## I. BACKGROUND

The facts in this case are largely undisputed. On December 3, 2002, Officer Bruce Voigt, a narcotics officer with the Topeka Police Department, obtained from the district court of Shawnee County, Kansas, a warrant to search Defendant's home for methamphetamine and items associated with the sale or use of methamphetamine, including weapons. The affidavit in support of the warrant stated that a reliable informant had reported seeing Defendant sell methamphetamine at least 15 times in the past month. According to the informant, Defendant's customers would contact him on his cell phone and Defendant would then deliver the methamphetamine to either the customer's residence or another location. The informant also said that Defendant commonly

left the methamphetamine in the glove compartment of his car, even when he was at home. The informant explained that Defendant was on federal parole and did not want to get caught with the methamphetamine in his house during an in-home visit by his parole officer.

Included in the affidavit was a summary of Defendant's criminal record, which Officer Voigt had gathered from a national computer database. Defendant had a 1990 conviction for felony auto theft and a 1997 conviction for marijuana possession. In 1998 and 1999 Defendant had five other arrests: (1) for domestic battery, obstruction, and terroristic threat; (2) for domestic battery, obstruction, possession of drug paraphernalia, and battery on a law-enforcement officer; (3) for domestic battery and unlawful restraint; (4) for domestic battery; and (5) for possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and traffic violations. In 2001 Defendant was convicted on a federal charge of felon in possession of a firearm; he was sentenced to 18 months' imprisonment and two years' supervised release. At the time this search warrant was issued, Defendant had been on supervised release for a little over two months.

As Defendant points out, Voigt did not investigate any of the facts surrounding these offenses, nor did he contact Defendant's parole officer for additional information. Also, at the time of the search the police had no specific

information that Defendant possessed a firearm or booby trapped his residence. Nor did they have any information about what was inside the house.

At 1:22 a.m. on December 5, 2002, an eight-member search team led by Officer Voigt executed the search warrant. As the team approached Defendant's residence, they noticed a light on inside but did not attempt to determine what was going on in the house. Without knocking, they executed the search warrant by forcing the front door with a battering ram. Once inside, they announced their presence and ordered everyone to the ground.

In the house the officers found 18 grams of methamphetamine but no firearms or other weapons. Defendant was indicted for possession with intent to distribute 18 grams of methamphetamine and conspiracy to possess methamphetamine with intent to distribute it.

At the suppression hearing Voigt testified that he preferred to "do a knock and announce entry on every search warrant we possibly can." App. at 68. Here, however, there were several reasons for the tactical decision not to knock and announce. First, there was Defendant's criminal history. Voigt testified:

> Going back over his past arrest record and convictions, he shows the potential for violence. And not only that, but his last arrest was for the federal gun charge. We also took in consideration during the raid briefing that he had just been released in September of this year, and less than two and a half months later we're doing a search warrant at his residence for selling methamphetamine and marijuana. To us, that shows a complete disregard for laws, or a person who is—possibly has the potential of having violence still.

-4-

*Id.* at 50. In addition, Voigt knew, based on his 10 years of experience as a narcotics officer, that firearms were tools of the drug trade. Moreover, he was concerned because of the lack of police knowledge of the inside of the residence. He testified that this lack of intelligence "itself is a dangerous situation because you don't know what to expect." *Id.* at 68.

The search team was also concerned about Defendant's destroying evidence. Voigt explained that this concern was based on the informant's statement that Defendant was on federal parole and did not want to be caught with methamphetamine in his house during a visit by his parole officer.

## II. DISCUSSION

The United States Supreme Court has held that the "Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997). But "the flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* (internal quotation marks omitted). "[T]he knock-and-announce requirement [can] give way 'under circumstances presenting a threat of physical violence,' or 'where police officers have reason to believe that evidence would likely be

destroyed if advance notice were given.'" *Id.* at 391 (quoting *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995)).

These justifications, however, must relate to the specific circumstances confronting the officers. *Richards* held that the Fourth Amendment did not allow Wisconsin's categorical authorization of no-knock entries in executing search warrants for felony-drug investigations. *Id.* at 387-88. Acknowledging that such investigations frequently involve a threat of violence and the likelihood of destruction of evidence, *id.* at 391, 394, the Court said that Wisconsin's blanket exception nevertheless improperly removed "from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case." *Id.* at 394. The Court gave two reasons for rejecting an exception "based on the 'culture' surrounding a general category of criminal behavior." *Id*. at 392. One was that it would justify unnecessary no-knock entries:

> First, the [Wisconsin] exception contains considerable overgeneralization. For example, while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree. For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence. Or the police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by a

-6-

no-knock entry. Wisconsin's blanket rule impermissibly insulates
these cases from judicial review.

*Id*. at 393. The other reason was that such blanket exceptions could eviscerate the

knock-and-announce requirement:

> A second difficulty with permitting a criminal-category exception to
> the knock-and-announce requirement is that the reasons for creating
> an exception in one category can, relatively easily, be applied to
> others. Armed bank robbers, for example, are, by definition, likely
> to have weapons, and the fruits of their crime may be destroyed
> without too much difficulty. If a *per se* exception were allowed for
> each category of criminal investigation that included a
> considerable—albeit hypothetical—risk of danger to officers or
> destruction of evidence, the knock-and-announce element of the
> Fourth Amendment's reasonableness requirement would be
> meaningless.

*Id.* at 393-94.

Thus, a reviewing court must "determine whether the facts and

circumstances of the *particular* entry justified dispensing with the knock-and-

announce requirement." *Id.* at 394 (emphasis added). "In order to justify a 'no-

knock' entry, the police must have a reasonable suspicion that knocking and

announcing their presence, under the particular circumstances, would be

dangerous or futile, or that it would inhibit the effective investigation of the crime

by, for example, allowing the destruction of evidence." *Id.* "This showing is not

high, but the police should be required to make it whenever the reasonableness of

a no-knock entry is challenged." *Id.* at 394-95. No stricter standard is required

-7-

when the entry involves destruction of property. *See United States v. Ramirez*, 523 U.S. 65, 69-70 (1998); *United States v. Banks*, 540 U.S. 31, 41-42 (2003).

We should not be quick to second-guess the decision to effect a no-knock entry. "In reviewing a challenge to the no-knock . . . execution of a search warrant, we review the execution from the perspective of reasonable officers who are legitimately concerned not only with doing their job, but with their own safety." *United States v. Colonna*, 360 F.3d 1169, 1176 (10th Cir. 2004). As we stated in *United States v. Basham*, 268 F.3d 1199 (10th Cir. 2001), "'[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant, subject of course to the general Fourth Amendment protection against unreasonable searches and seizures.'" *Id.* at 1203 (quoting *Dalia v. United States*, 441 U.S. 238, 257 (1979)) (internal quotation marks omitted).

The Government urges that the undisputed facts in this case establish that the police had "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous," *Richards*, 520 U.S. at 394, thus excusing the no-knock entry. We agree.

We recognize that the information that Defendant was dealing methamphetamine, combined with Voigt's knowledge that firearms are tools of the drug trade, would not alone be sufficient to support an exception. *See*

*Richards*, 520 U.S. 385. Nevertheless, that the police are investigating a felony-drug case is certainly relevant to the reasonableness of the entry. Indeed, when the Supreme Court explained in *Richards* why it rejected Wisconsin's blanket exception to the knock-and-announce requirement for such cases as "contain[ing] considerable overgeneralization," *id*. at 393, it focused on the possibility of unusual circumstances being present, such as the absence of the suspects from the premises, or the drugs being "of a type or in a location that made them impossible to destroy quickly." *Id.*

On occasion, a suspect's significant criminal history of violence may provide the necessary additional specific information justifying a no-knock entry. In *Colonna* we upheld the no-knock execution of a search warrant of the defendant's home for drugs. 360 F.3d at 1172. The affidavit supporting the warrant catalogued the defendant's criminal history. He had been arrested 24 times and been convicted of two felonies. Among the arrests were ones for "strong arm robbery, aggravated assault, assault on a police officer, resisting arrest, aggravated robbery with a firearm, failure to stop for a police officer, and terroristic threats." *Id.* at 1176. In addition, the affidavit stated that the defendant "had been very aggressive with police officers in the past, and has even hit, punched, or otherwise attacked certain officers." *Id.* (internal quotation marks omitted). It also noted that children had been observed playing in the area

during the day, *id.*, which explains in part why the warrant was executed at 3:00 a.m., *id.* at 1173. Although the affidavit further alleged that the defendant had bragged to an officer about owning a handgun, that allegation was not considered because the trial court found it to be a deliberate falsehood. *Id.* at 1173-74. Thus, the only justification for the no-knock entry, beyond the usual concerns in felony-drug investigations, was the defendant's criminal history. (The opinion mentions "the expressed fear of a concerned citizen that Mr. Colonna would retaliate violently," *id.* at 1176; but there is no elaboration on the underlying basis of the fear, which may have been the same evidence supporting the officers' fears.)

In the case before us the suspect's criminal history likewise constitutes sufficient additional information to justify the no-knock entry. Defendant's four arrests for domestic battery and terroristic threat indicated a volatile, violent disposition; and the arrest for battery on a law-enforcement officer further indicated that he did not have substantially greater self-control when confronting police officers. He was a hardened criminal; he had two felony convictions and apparently started committing new felonies almost immediately upon his release from prison two months before the search at issue. And he was sufficiently attracted to guns that he had possessed one after his first felony conviction, despite the severe consequences faced by a felon found in possession of a firearm.

-10-

The Supreme Court has said that the "showing [that knocking and announcing would be dangerous] is not high." *Richards*, 520 U.S. at 394. In our view, the information about Defendant was a sufficient showing to permit the no-knock entry.

We recognize that the threat of danger may have been greater in some of our decisions upholding no-knock entries. Defendant cites in particular to *United States v. Basham*, 268 F.3d 1199 (10th Cir. 2001); *United States v. Gay*, 240 F.3d 1222 (10th Cir. 2001); *United States v. Maden*, 64 F.3d 1505 (10th Cir. 1995), and *United States v. Dahlman*, 13 F.3d 1391 (10th Cir. 1993). None of these decisions, however, purports to set a minimum threshold of justification for no-knock entries. Perhaps they do not compel a determination that the entry of Defendant's home was lawful, but neither do they compel the inference that it was *un*lawful.

Finally, we address Defendant's contention that the failure of the officers to seek a no-knock authorization when they obtained the search warrant, even though they knew at the time essentially all the information now being used to justify the no-knock entry, casts doubt on the sincerity of their belief in the need for such an entry. We are not persuaded.

To begin with, there is no constitutional requirement that the search warrant specify the type of entry permitted in its execution. As we observed in *Basham*, 268 F.3d 1199:

> Basham first contends that the district court should have suppressed the evidence because the magistrate failed to inquire as to the means by which the warrant was to be executed. He argues that, in situations where a no-knock warrant is requested, the magistrate has an independent duty to inquire as to the means by which service is to be executed in order to protect public safety, including the safety of any minor children.
>
> Basham presents no authority for this proposition. In *Dalia v. United States*, 441 U.S. 238, 256-59 (1979), the United States Supreme Court rejected the contention that an order allowing a wire intercept violated the Fourth Amendment because it did not specify the means by which the intercept would be installed. The Court stated that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant, subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" *Id.* at 257. The Court reasoned that it is often impossible to anticipate what actions will be necessary in serving a warrant, and further noted that "[n]othing in the decisions of this Court . . . indicates that officers requesting a warrant would be constitutionally required to set forth the anticipated means for execution *even in those cases where they know beforehand that unannounced or forced entry likely will be necessary.*" *Id.*, n.19.

*Basham*, 268 F.3d at 1203-04 (emphasis added). A leading treatise reaches the same conclusion:

> It would seem . . . that the latter position [that police are *never* required to seek magistrate authorization for a no-knock entry] is correct, for it is supported by "a number of fundamental principles: 1) the rule of announcement is a requirement of the Fourth Amendment's reasonableness clause, not its warrant clause; 2) the

-12-

> validity of a no-knock execution of a search warrant is subject to after-the fact judicial review for constitutional reasonableness, which is determined by reference to the circumstances as they existed at the time of the entry; and 3) the manner in which a search warrant is executed is not subject to the requirements of the warrant clause and therefore does not require prior judicial authorization.**"**

2 Wayne R. LaFave, *Search and Seizure*, § 4.8(e), at 127 (3d ed. Supp. 2004) (quoting *State v. Henderson*, 245 Wis. 2d 345, 364, 629 N.W.2d 613, 621 (2001)).

Because the law imposed no requirement upon the officers to seek a no-knock warrant, there is nothing suspect in their failure to do so here. It follows that there is no ground for inferring from this failure that the officers must not have sincerely believed they had sufficient grounds for a no-knock entry. Moreover, we question whether the officers' subjective beliefs are relevant to the validity of a no-knock entry. *Cf. United States v. Maden*, 64 F.3d 1505, 1507-09 (10th Cir. 1995) (holding that the no-knock entry was lawful because it was objectively reasonable, despite the district court's finding that the officers lacked a subjective belief that the defendant was potentially dangerous); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("'[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978))); *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) ("When determining whether an officer

possessed a reasonable articulable suspicion, the subjective motivations of an arresting officer are irrelevant.").

The absence of any warrant requirement for a no-knock entry also helps explain the meaning in this context of "exigent" or "emergency" circumstances, which we have sometimes indicated must be present to justify a no-knock entry. *See United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996); *Maden*, 64 F.3d at 1509 n.2; *United States v. Stewart*, 867 F.2d 581, 584 (10th Cir. 1989). Those terms are often used in justifying exceptions to the warrant requirement. In that context, circumstances are "exigent" when they require immediate action. When "exigent circumstances" are present, it is necessary to conduct the search or seizure promptly, or, say, the evidence sought will be removed or destroyed; so the courts recognize the authority of officers to proceed without first seeking a warrant. *See Illinois v. McArthur*, 531 U.S. 326, 331 (2001); *United States v. Rhiger*, 315 F.3d 1283, 1288-91 (10th Cir. 2003). But since there is no requirement that a no-knock entry be authorized by a warrant, our use of the terms "exigent" or "emergency" in this context does not refer to the need to effect a no-knock entry before the officers can obtain a warrant authorizing the manner of entry. Rather, it simply refers to the need to employ such an entry because of the threat of violence or destruction of evidence if the officers knock and announce their presence before entry. Obviously, that type of circumstance can be known

-14-

long before the actual entry and still remain "exigent." *See United States v. Beckford*, 962 F. Supp. 767, 778-79 (E.D. Va. 1997). On occasion, perhaps officers can avoid the risks of violence or lost evidence if they know of those risks sufficiently far in advance for them to take measures less intrusive than those actually employed, and their failure to do so may undermine the justification for the actual manner of entry. *See Stewart*, 867 F.2d at 584-85 (use of battering ram and stun grenade in effecting entry not justified by scant evidence of danger). But Defendant has not suggested how that could have been accomplished here.

## III. CONCLUSION

For the foregoing reasons we REVERSE the district court's grant of Defendant's motion to suppress and REMAND for further proceedings consistent with this opinion.

United States v. Musa, No. 03-3343

**HENRY, J.**, dissenting.

In choosing to use no-knock entries, rather than simply waiting until a suspect leaves the curtilage of his home, officers may damage property and endanger themselves, innocent family members, and others. Those risks, as well as the heightened protection that Anglo-American law has long afforded the home, explain why these entries should be the exception rather than the rule.

Here, in my view, the district court properly concluded that the government failed to establish the exigent circumstances necessary to excuse compliance with the Fourth Amendment's knock and announce requirement. The district court's opinion is exceptionally thorough and well-reasoned, and it properly rejects the government's attempted justifications for the no-knock entry. Accordingly, I would affirm the district court's decision granting Mr. Musa's motion to suppress.

Initially, I note that we owe considerable deference to the district court, which acquired, in Judge Posner's words, "a feel for the case." Cook v. City of Chicago, 192 F.3d 693, 697 (7th Cir. 1999). Although the court's ultimate determination that exigent circumstances did not justify the no-knock entry is a legal question that we review de novo, United States v. Dahlman, 13 F.3d 1391, 1398 (10th Cir. 1993), we examine the district court's factual findings only for clear error. Id. Moreover, we must consider the evidence in the light most

favorable to the district court's determination. <u>United States v. Rice</u>, 358 F.3d 1268, 1273-74 (10th Cir. 2004).

Here, the district court determined that:

> [t]here was no evidence that [Mr. Musa] currently possessed a firearm or that there were weapons on the premises. There was no particularized evidence of threats to law enforcement officers or threats that [Mr. Musa] would respond to law enforcement activity with violent conduct. There was no evidence that [Mr. Musa] was currently a methamphetamine user or given to violent or irrational behavior. No surveillance was conducted to determine if the house had been fortified or if the recipients were monitoring activity in the surrounding area. No effort was made to determine who was in the house at the time that entry was made.

<u>United States v. Musa</u>, 288 F. Supp. 2d 1205, 1213 (D. Kan. 2003). These factual findings are not clearly erroneous. As a result, we must accept them in making the Fourth Amendment determination of the reasonableness of the no-knock entry into Mr. Musa's home.

The government has prudently elected not to challenge the district court's holdings that: (1) officers could not rely upon the fact that Mr. Musa was on supervised release to eliminate the knock and announce requirement; <u>see</u> <u>id.</u> at 1208 ("The government does not cite, nor did the Court find, cases that extend a probationer's diminished expectation of privacy to elimination of the knock and announce requirement, and the Court declines to do so in this case."); and (2) "the fact that this was a drug investigation does not by itself justify a no-knock

-2-

approach, although such investigations 'may frequently present circumstances warranting a no-knock entry.'" Id. at 1209 (quoting Richards v. Wisconsin, 520 U.S. 385, 394 (1997)).

Instead of relying on the fact that Mr. Musa was on supervised release and that he was a suspect in a drug investigation, the government now relies on his criminal history. The majority accepts this argument, but I cannot. In my view, the evidence presented by the government is insufficient to justify the no-knock entry.

As the majority states, before they may dispense with the knock and announce requirement, law enforcement officers "must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards, 520 U.S. at 394. The standard is an objective one. See United States v. Stewart, 867 F.2d 581, 584 (10th Cir. 1989) (noting that officers' suspicion of exigent circumstances must be "objectively reasonable"); see also United States v. Dahlman, 13 F.3d 1391, 1398 (10th Cir. 1993) ("The term 'exigent circumstances' requires that the officers hold an objectively reasonable belief that there is an urgent need for immediate action").

Accordingly, the testimony of a particular officer regarding exigent circumstances may not satisfy that objective standard. Here, for example, Officer Voigt's testimony that "he was concerned because of the lack of police knowledge of the inside of the residence" and that "this lack of intelligence 'itself is a dangerous situation because you don't know what to expect,'" Maj. op. at 5 (quoting Aplt's App. at 68), does not establish exigent circumstances sufficient to justify the no-knock entry. The statement is tautological and would apply to virtually all warrants.

I agree that a suspect's criminal history may be relevant to the determination of whether a no-knock entry is justified. However, that does not mean that every suspect with a prior record of arrests or convictions has forfeited his Fourth Amendment right to have the police officers knock and announce before they enter his home. Instead, in my view, in order to justify a no-knock entry, the officers must evaluate the particular facts surrounding a suspect's prior record. This court must then review that evaluation to determine whether it meets the objective standard necessary to justify a no-knock entry.

In this case, the particular facts surrounding Mr. Musa's record include underlying convictions not for crimes of violence toward law enforcement officers but for stealing a car and possessing marijuana. The subsequent crime

-4-

for which he was on supervised release was possession of a firearm by a felon, a status crime relating to these non-violent offenses.

I acknowledge that Mr. Musa had five arrests in 1998 and 1999. However, these arrests do not appear to have led to prosecution or conviction. In the absence of a particularized inquiry into the circumstances surrounding these arrests, we should be wary of reaching definitive conclusions about a suspect's dangerous tendencies. I would therefore hesitate to characterize Mr. Musa as a "hardened criminal." Id. at 10.

Moreover, in the case on which the majority relies to justify reliance on a suspect's criminal history, United States v. Colonna, 360 F.3d 1169, 1176 (10th Cir. 2004), we noted that the defendant had been convicted of two felonies and that his twenty-four arrests "were for a variety of offenses that could make a reasonable officer apprehensive, including strong arm robbery, aggravated assault, assault on a police officer, resisting arrest, aggravated robbery with a firearm, failure to stop for a police officer, and terroristic threats." Id. Moreover, the government identified additional evidence of the defendant's violent tendencies. In particular, the affiant stated that the defendant had been "very aggressive with police officers in the past" and had even "hit, punched or otherwise attacked" certain officers. Id. The affiant also stated that children had been observed playing in the area. Finally, we noted "the expressed fear of a

concerned citizen that Mr. Colonna would retaliate violently." Id. Thus, as the majority observes, the defendant had a "significant criminal history of violence." Maj. op. at 9.

Here, the officers did not obtain the same kind of particular evidence of violent tendencies. There is no direct evidence that Mr. Musa had been "very aggressive" with police officers, id., or that any citizen had expressed fear of violent retaliation from him. Instead, the officers relied only upon a cursory background search. In his testimony at the hearing on the motion to suppress, Officer Voigt acknowledged that he did not conduct any inquiry concerning the facts underlying Mr. Musa's prior convictions. Aplt's App. at 53-54. As to Mr. Musa's prior arrests, Officer Voigt acknowledged that none of those arrests led to criminal prosecutions and that he had not reviewed any of the police reports to determine what had actually occurred when Mr. Musa had been arrested. Id. at 55. Officer Voigt further acknowledged that additional inquiry regarding the facts underlying Mr. Musa's prior arrests would not have affected his conclusion that officers' safety would be threatened by knocking and announcing their presence. In particular, Mr. Musa's attorney asked Officer Voigt, "Would it have made any difference to you, Officer, if you had investigated, say, the arrest on battery on a law enforcement officer and the battery included nothing more than

-6-

spitting on the officer?"  Aplt's App. at 69.  Officer Voigt replied, "No it would not."  Id. at 70.

In my view, that testimony demonstrates that the officers here made the kind of categorical assessment of dangerousness that the Supreme Court has condemned.  "[T]he fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case."  See  Richards, 520 U.S. at 394.

Additionally, my review of our prior knock and announce cases indicates that we have found exigent circumstances only when there is substantially more evidence that there is in this case that a no-knock entry would jeopardize officer safety or risk the destruction of evidence.  See, e.g., United States v. Rhiger, 315 F.3d 1283 (10th Cir. 2003)  (smell of methamphetamine cooking and risk of explosion); United States v. Gay, 240 F.3d 1222 (10th Cir. 2001) (information that defendant had jumped bail, had been involved in a police shootout, and was armed at all times); United States v. King, 222 F.3d 1280 (10th Cir. 2000) (information that defendant sold drugs, belonged to a gang, had previously displayed a willingness to use his gun, and that another drug dealer might be present in the house with a gun); United States v. Maden, 64 F.3d 1505, 1509-10 (10th Cir. 1995) (information that defendant was a wanted fugitive, that another

-7-

fugitive was present in the house, that officers had removed a loaded semi-automatic handgun from the defendant's motel room eight months earlier, that the defendant had placed a murder contract on an officer, and that he had a quantity of cocaine in his apartment).

In my view, the facts of the case at hand demonstrate the continuing importance of this court's observation in United States v. Stewart, 867 F.2d 581, 584 (10th Cir. 1989), that the showing of exigent circumstances necessary to dispense with the knock and announce requirement must be "especially clear." To be sure, in Stewart we required such a clear showing of exigency because "there was no knock or warning whatsoever[;] . . . there was no information as to who was in the house[;] . . . the destruction of physical property took place[;] and . . . the occupants of the residence could be injured as a result of the entry." Id. In a case decided after Stewart, the Supreme Court has held that one of these factors—the fact that the no-knock entry caused the destruction of property—is not relevant to the determination of whether the no-knock entry was justified. See United States v. Ramirez, 523 U.S. 65, 71 (1998). In another post-Stewart case, the Court has stated that the showing required of the government is "not high," Richards, 520 U.S. at 394, but the Court cautioned that "the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." Id. at 394-95. Thus, if the knock and announce requirement is to

-8-

remain the rule rather than the exception, we must still be able to tell the difference between the ordinary risks to officer safety in serving search warrants and the risks to officer safety in instances in which a no-knock entry is justified. Here, the government has not established such a clear difference.

Moreover, I remain concerned about the prevalence of no-knock entries in Kansas. As I noted in United States v. McCloud, 127 F.3d 1284, 1288 n.3 (10th Cir. 1997), this court "seem[s] to be reviewing the actions of Kansas police executing 'knock and announce' warrants with some frequency."

There are several problems with this kind of entry. First, as cases have shown, innocent bystanders, family members, and the officers themselves can be in grave danger. See Miller v. United States, 357 U.S. 301, 313 n.12 (1958) (stating that "[c]ompliance [with the knock and announce requirement] is also a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder"); Holland v. Harrington, 268 F.3d 1179 (10th Cir. 2001) (considering officers' entry into a home during the investigation of a misdemeanor, during which laser sights were trained on children at play). Second, mistakes can occur, and the wrong house can be entered. Third, substantial property damage can occur, and the consequences will frequently fall on third parties. Accordingly, these entries should be made only when the circumstances are truly exigent.

Finally, the Supreme Court has emphasized that the Fourth Amendment draws "a firm line at the entrance to the house," and "[t]hat line . . . must be not only firm but also bright." Kyllo v. United States, 533 U.S. 27, 40 (2001) (quotation marks omitted). That is because "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States Dist. Court, 407 U.S. 297, 313 (1972). Thus, in "the often competitive enterprise of ferreting out crime," Johnson v. United States, 333 U.S. 10, 14 (1948), police officers must "strike[] the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." Richards, 520 U.S. at 394.

Here, by relying only upon Mr. Musa's prior record and failing to undertake a particularized inquiry into the risks of no-knock entry, the officers did not strike the appropriate balance. I would therefore affirm the district court's decision granting Mr. Musa's motion to suppress.